(163 App. Div. 789)

## MANKES v. FISHMAN. (No. 199–53.)

(Supreme Court, Appellate Division, Third Department. September 15, 1914.)

1. APPEAL AND ERROR (§ 1050*)—GROUND FOR REVERSAL—ADMISSION OF EVIDENCE.

In an action for loss of time caused by defendant's failure to deliver as agreed materials purchased by plaintiff and necessary to the prosecution of his work, the admission of incompetent testimony of a telephone conversation tending to show that defendant stated that he had not sent the materials because plaintiff was indebted to him was ground for reversal, where defendant's evidence was that the materials were shipped within a day or two after the purchase.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

2. EVIDENCE (§ 148*)—COMPETENCY—TELEPHONE CONVERSATION—PROOF OF IDENTITY.

Evidence of a telephone conversation purporting to have been between the witness and defendant was improperly admitted, where defendant denied having such conversation, and the witness, though testifying that he put in a call for defendant in New York City and that the person to whom he talked said he was defendant, stated that he could not recognize defendant's voice on the telephone, and there was no evidence confirmatory of the person talked with being defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 438; Dec. Dig. § 148.*]

3. EVIDENCE (§ 148*)—COMPETENCY—TELEPHONE CONVERSATION—PROOF OF IDENTITY.

A telephone conversation, otherwise admissible, is properly received in evidence when, from all the circumstances, the identity of the person answering the telephone has been established with reasonable certainty, though the witness is unable to recognize the voice of the person answering; the question of the identity of the person being then one of fact for the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 438; Dec. Dig. § 148.*]

4. DAMAGES (§ 23*)—BREACH OF CONTRACT—MATTERS WITHIN CONTEMPLATION OF PARTIES.

The rule that all damages occasioned by the breach of a contract may be recovered is modified by the rules excluding damages not reasonably within the contemplation of the parties, and damages which are speculative, contingent, or remote.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58, 62; Dec. Dig. § 23.*]

Kellogg and Howard, JJ., dissenting.

Appeal from Trial Term, Sullivan County.

Action by William Mankes against Louis Fishman. From judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Goldfein & Weltfisch, of New York City, for appellant.

John D. Lyons, of Monticello (Ellsworth Baker, of Hurleyville, of counsel), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LYON, J.   The basis of the judgment appealed from is a verdict rendered in favor of the plaintiff to compensate him for the loss of time of himself and men by reason of the alleged delay of the defendant in delivering as agreed certain materials necessary for the prosecution of their work.   The plaintiff was a plumber at South Fallsburgh, N. Y.   The defendant was a dealer in plumbers' supplies in New York City.   July 12, 1911, plaintiff and one Sherman, with whom plaintiff had a contract for installing the plumbing in three houses owned in part by the latter near Monticello, N. Y., together visited the defendant's place of business and purchased the materials necessary for the work, paying in full therefor at the time of purchase.   Plaintiff and Sherman testified that defendant promised to ship such materials the following day, and said the materials would be in Monticello within two days, while in fact none of them were received until the expiration of a week or ten days after the date of purchase, and then only a small portion, and that other portions were received at such irregular times, and in fact some of them not at all, that the plaintiff and his employés were compelled to remain idle for days and parts of days, and finally to quit the work with the contract uncompleted, although, had the plumbing supplies been received as promised, plaintiff and his three men could have completed the contract in about four or five days' time.   The defendant denied that he had promised that the materials would be shipped the following day and would reach Monticello within two days, and the bookkeeper then in the employ of the defendant testified that the materials were in fact shipped from New York, necessarily in several packages, but all at one time, and within a day or two of the time of purchase.   Concededly the plaintiff had received the bills of lading from the defendant, but they were not produced upon the trial, the plaintiff claiming to have lost them, and no evidence was given indicating whether any delay in receiving the materials was the fault of the defendant or of the railroad company, otherwise than the alleged admissions of the defendant of delay in shipment and the somewhat indefinite testimony of the plaintiff, in effect that goods shipped by freight from New York City were ordinarily received at Monticello within a day or two.   The court instructed the jury that when the defendant delivered the materials to the railroad company, properly directed, his duty ceased, and he could not be held liable for any delays of the common carrier in making delivery.   Thus the issue whether the materials were in fact delivered to the railroad company within a day or two of the time of purchase became the vital issue in the case.

[1, 2]  The witness Sherman, called by the plaintiff, testified that at the request of the plaintiff, and at least one week and probably about two weeks after making the purchase, the witness put in a telephone call for Mr. Fishman, in New York City; that the witness would not say that he recognized the defendant's voice on the telephone, but that he asked whom it was, and the person answering told him it was Fishman; and that he then had a conversation with him.   The witness was then permitted to testify, under the objection and exception of the defendant:

"I asked him what was the reason why he didn't send out Mr. Mankes' order, that they were all waiting for the goods, and that he couldn't complete the job on account of it. He told me: 'I am not going to send the goods to a man of that kind; he owes me money, and I wouldn't send it until everything is settled.'"

The defendant denied that he had any such conversation with Sherman, and there is nothing whatever in the record confirmatory of the person talked with being the defendant; but, on the other hand, concededly the plaintiff did not owe the defendant, having fully paid him at the time of making the purchase, as the plaintiff, the defendant, and Sherman all testified. This testimony of the witness Sherman, so strongly contradictory of that of the defendant and of his bookkeeper that the materials were in fact shipped within a day or two of the time of purchase, may have been extremely prejudicial to the defendant, and, if improperly admitted, requires the reversal of the judgment and order appealed from.

In the case of Murphy v. Jack, 142 N. Y. 215, 36 N. E. 882, 40 Am. St. Rep. 590, it was held that an affidavit upon which an attachment was issued was insufficient where the allegations were upon information and belief, founded upon the statements of the plaintiff and his counsel by telephone to the affiant; it not appearing that the affiant knew the person so communicating with him recognized his voice, and such person not having been in any way identified. The court said:

"There would be no objection to the information having been conveyed through the medium of the telephone, if it had been made to appear that the affiant was acquainted with the plaintiff and recognized his voice; or if it had appeared. in some satisfactory way, that he knew it was the plaintiff, who was speaking to him. None of these facts, however, were averred. * * * To authorize an attachment to issue, upon the affidavit furnished here, was in disregard of the rule which requires that the source of information shall be disclosed in such a way as to enable the court to decide upon the probable truth of the statements and the authenticity of the jurisdictional facts."

In the case of People v. McKane, 143 N. Y. 455, 474, 38 N. E. 950, 955, the court said:

"A witness for the people testified to very important declarations made by the defendant to him in a conversation through the telephone. A proper objection was made and exception taken. It appeared that the witness did not then know defendant or recognize his voice. In the absence of some other proof this exception would have been good. Murphy v. Jack, 142 N. Y. 215 [36 N. E. 882, 40 Am. St. Rep. 590]."

However, the identity of the person telephoning was later established, and the court held that the objection was in this way cured, and that the conversation was properly in the case.

In the case of People v. Strollo, 191 N. Y. 42, 61, 83 N. E. 573, it was held that the testimony of a witness as to his conversation over the telephone with a man whose voice he did not then recognize, but did subsequently recognize as the voice of the defendant, might well have been thought by the jury to be weak evidence, but that the court could not say that it was incompetent evidence.

In the case of Tabor v. City of Buffalo, 136 App. Div. 258, 120 N. Y. Supp. 1089, the court said:

"I think the evidence of the conversation over the telephone by the witness Wright with some one in the department of public works was properly excluded. The evidence was incompetent under the pleadings, and there was no evidence to identify the person answering the telephone in that department."

In the case of Colligan v. City of New York, 155 App. Div. 475, 140 N. Y. Supp. 271, the court said:

"It is proper, of course, for a person identifying a voice with which he is familiar to testify to an admission, or to any material fact; but here there is nothing to show that the witness was familiar with Harrison's voice, or that he was in any position to hear the voice distinctly."

That conversations over the telephone, otherwise competent, are admissible in evidence where the witness testified that he recognized the voice, has long been held. People v. Ward, 3 N. Y. Cr. R. 483; Lord Electric Co. v. Morrill, 178 Mass. 304, 59 N. E. 807; Harrison Granite Co. v. Pennsylvania R. R. Co., 145 Mich. 712, 108 N. W. 1081; National Bank of Ashland v. Cooper, 86 Neb. 792, 126 N. W. 656.

In the case of Harris v. Raskin (App. T.) 142 N. Y. Supp. 342, the court said:

"The plaintiff attempted to show ratification by one of the defendants through a telephone conversation, in which the person speaking represented himself as one of the defendants without proof of the actual identity of the person speaking. I think that this evidence was inadmissible."

In the case of Hancock v. Hartford Fire Ins. Co., 81 Misc. Rep. 159, 142 N. Y. Supp. 352, it was held that ordinarily a telephone conversation is inadmissible unless the person with whom the conversation is held is identified.

In the case of Funk & Wagnalls v. Bruenn (App. T.) 142 N. Y. Supp. 291, the court said:

"The only proof that defendant had made the contract of purchase was offered by an agent of plaintiff in the shape of conversations he claimed to have had with defendant. On cross-examination, it appeared that these conversations had been held over the telephone, and that plaintiff had never seen the defendant and did not know him. The only basis for assuming that he had conversed with the defendant was that at the office of a large corporation, which he had called up, he had asked for a person by defendant's name, and some one had responded. Defendant's attorney then moved to strike out all this evidence, and excepted to a denial of his motion. It is not necessary to cite authorities to the effect that the evidence was incompetent."

In the case of Dunham v. McMichael, 214 Pa. 485, 63 Atl. 1007, it was held that, unless the voice of the person speaking be sufficiently identified, it is reversible error to admit testimony of the conversation.

In the case of Missouri Pacific Ry. Co. v. Heidenheimer, 82 Tex. 195, 17 S. W. 608, 27 Am. St. Rep. 861, it was held that a conversation with a person in plaintiff's office who answered a call by telephone was admissible although the witness could not state the name of the person answering nor that he was the agent, but testified that he recognized the voice of the person answering as one of the employés of the office with whom he had been accustomed to transact business by telephone.

In the case of Planters' Cotton-Oil Co. v. Western Union Telegraph Co., 126 Ga. 621, 55 S. E. 495, 6 L. R. A. (N. S.) 1180, the stenographer of the plaintiff testified that he knew three persons who were employed in defendant's office, that he thought that the voice which answered was not that of two of the three, that he did not know who it was that he telephoned the message to, that he did not recognize the voice that answered the telephone that day, that it was a voice that the witness was not accustomed to as coming from the telegraph office, that the witness knew that it was not a certain one of the three employés because of the delay in taking the message, and that the witness had to repeat it. The court directed a verdict in favor of the defendant. Upon appeal the court said:

"There was not sufficient evidence to support a verdict for the plaintiff. The stenographer attempted to deliver over the telephone the message intended to be transmitted. He did not see or otherwise recognize the person to whom he was speaking over the telephone, and it was impossible for him to say in fact that he was conversing with the agent of the defendant. He did not know even that he was talking into any telephone in the office of the defendant. His whole information upon that point was based upon hearsay evidence, which, although admitted without objection, was incompetent to prove the fact. See Eastlick v. Southern Ry. Co., 116 Ga. 48 [42 S. E. 499]. The telephone operator may not have connected him with the Western Union office. If such connection was in fact made, the higher and better evidence would have been the testimony of the operator of the telephone company. There is no proof that the person who answered the plaintiff's agent at the other end of the line was the defendant's agent. The sayings of that person, under the repeated rulings of this court and the well-settled law, would not be admissible against the defendant until the fact of agency had been established. There was nothing, therefore, to show that the plaintiff's stenographer communicated with either the telegraph office or any agent of the defendant in that office. The plaintiff wholly fails to show a delivery of the message to the defendant, and there is no theory upon which the defendant could be held responsible for the damages claimed."

In Swing v. Walker, 27 Pa. Super. Ct. 366, the court said:

"The offer to prove a conversation over the telephone was clearly inadmissible. The object of the evidence was to show admissions of Walker, one of the defendants. It appeared from the testimony of the witness that he was not acquainted with Walker's voice, and could not identify it. No discussion is necessary to show that a declaration or admission is not admissible unless the party making it is identified as the person sought to be charged. The introduction of the telephone has not changed the rule of evidence on that subject. If the witness had been in the presence of the person at the other end of the line, the declarations of that person would not have been admissible without evidence that he was one of the defendants. There are numerous cases, as shown by the citations of the learned counsel for the plaintiffs, which make telephone communications competent under certain circumstances. They relate to communications by telephone from an office in response to communications or inquiries, and to the presumption which arises from the transaction of business by telephone from the place of business of the person in whose control the telephone is. None of them have any bearing upon the question at issue."

[3] However, the identity of the person answering the telephone may be established by means other than the recognition of the voice of the person answering, and a conversation otherwise admissible is properly received in evidence when from all the circumstances the identity of the person answering the telephone has been established with

reasonable certainty. The question as to the identity of the person may be one of fact for the jury. Thus it was held, in the case of Cox v. Cline, 147 Iowa, 353, 126 N. W. 330, that the identity of a person speaking through a telephone may be established, not alone by the sound of his voice, but from other circumstances as well; as from the fact that he appeared at the telephone in response to a call for a person by his name at a place where he had been located as being, admitted that such was his name, and was familiar with the transactions inquired about, which were that he had sold a horse to some parties at Hills, when asked where the notes were which were given for the horse he answered that he did not know just where they were, and when asked where he would have the horse sent, which was in the line of a rescission of the contract of sale, concerning which there had been correspondence with the person called, he hung up the receiver.

In the case of Barrett v. Magner, 105 Minn. 118, 117 N. W. 245. 127 Am. St. Rep. 531, it was held that:

"A telephone conversation is admissible in evidence, when, from all the circumstances, the identity of the party answering the telephone is established with reasonable certainty; and recognition of the voice, or identity by admission of one who answers that he is the person desired, is not necessarily required. A witness testified that he secured telephone connection with the place of business of a party, that some one answered and stated the one wanted was not in, but would be called, and that soon thereafter another voice answered, and a conversation took place respecting a certain business transaction. Held, the evidence was admissible; the witness having also testified that the talk over the 'phone was of the same character as occurred a few days previous in a personal conversation between the same parties." Had there been no previous personal conversation, a failure to identify the party under such circumstances might not be sufficient to make it admissible prima facie.

However, in certain states the courts have laid down a less stringent rule as to the identification of the person answering the telephone, where the identification required to be shown was of the office or place of business rather than of the particular individual with whom the conversation was carried on. In the case of Guest v. Hannibal & St. J. R. R. Co., 77 Mo. App. 258, it was held that conversations over a telephone relating to shipping instructions as to a piano then in defendant's depot, which was destroyed by fire, were admissible in evidence where plaintiff's agent asked the central station of the telephone company to connect him with the defendant's depot, and he answered that he would and had done so, and the person answering stated that he was defendant's agent and that it must be presumed that the operator at the central station had done his duty, and that the person answering was such agent.

In the case of Wolfe v. Missouri Pacific Ry. Co., 97 Mo. 473, 11 S. W 49, 3 L. R. A. 539, 10 Am. St. Rep. 331, which was an action to recover damages for the breach of a contract to carry and deliver seven car loads of wire, the wire having been delivered by the railway company to the wrong person, the court said regarding the admissibility of a telephonic conversation between the witness and a person whose voice the witness did not identify as that of either of the plaintiffs or their clerk:

"The courts of justice do not ignore the great improvement in the means of intercommunication which the telephone has made. Its nature, operation, and ordinary uses are facts of general scientific knowledge, of which the courts will take judicial notice as part of public cotemporary history. When a person places himself in connection with the telephone system through an instrument in his office, he thereby invites communication, in relation to his business, through that channel. Conversations so held are as admissible in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. The fact that the voice at the telephone was not identified does not render the conversation inadmissible."

It seems to have been conceded that connection had been made with plaintiff's private office and that the person was talking from that office.

In the case of Godair et al. v. Ham National Bank, 225 Ill. 572, 80 N. E. 407, 116 Am. St. Rep. 172, 8 Ann. Cas. 447, an action by a bank against a commission firm for the proceeds of drafts cashed by the bank which the commission firm refused to pay, the cashier of the bank called the Godair Commission Company ·by telephone, and, having asked for Mr. Godair and been told that he was there, talked with some person connected with the Godair Commission Company and inquired whether certain drafts upon the commission company by· a buyer of live stock would be paid; former drafts given for live stock shipped to the commission company having been paid. The cashier testified that he did not know Mr. Godair and did not recognize his voice and could not say with whom he talked at the Godair Commission Company. The court held that the objection to the testimony was properly overruled and quoted with approval a portion of the above language from the opinion in Wolfe v. Missouri Pacific Ry. Co., supra.

In the case of General Hospital Society v. New Haven Rendering Co., 79 Conn. 581, 65 Atl. 1065, 118 Am. St. Rep. 173, 9 Ann. Cas. 168, an action brought to recover for hospital treatment furnished two of defendant's employés who had been severely burned, it was held that:

"A conversation by telephone between an agent of the plaintiff at its office, with a person in the office of the defendant speaking for the defendant, unaccompanied by evidence that the person speaking for the defendant was authorized to use the defendant's telephone for the purpose of communicating messages from the office of the defendant other than a presumption arising from the use of the defendant's telephone in the defendant's office and in the course of business and experience necessarily involved in the use of this instrumentality for communication, is prima facie admissible for any purpose that a conversation with a person at the office of the defendant who is apparently in charge of the office as the defendant's representative would be admissible. (Citing cases.) The fact that a person in the defendant's office, apparently in charge as its representative, told the plaintiff to send an ambulance, as testified, is a fact relevant to the issues raised by the pleadings. The defendant, however, did not object to this testimony, and it was received by the court without objection."

The defendant did, however, object to the testimony of plaintiff's witness that the person so telephoning stated that the defendant would pay for the care of the injured men, upon the grounds that the plaintiff had not established the identity of the person telephoning or the place from which the telephone call came. The court

found that the call came from the office of the defendant, and there was evidence sustaining the finding. It appeared that, after one of the men had been discharged from the hospital at the end of nine days, the plaintiff presented to the defendant at its office a bill for his treatment, and that defendant's representative did not then disclaim responsibility, but said that such matters were attended to at the main office at Boston, and that he would submit it to that office. The defendant produced no evidence that the person who assumed to act was clothed with authority. The court held, the objection being general, the evidence, if admissible for one purpose but inadmissible for another, would be presumed to have been received only for the legitimate purpose in the absence of a finding to the contrary, and that:

"A statement by a person in the defendant's office, apparently having charge of the office as its representative, is a fact which, in connection with other facts, might tend to prove the liability of the defendant, not as evidence of a promise made by the defendant through its agent, but as one link in a chain of circumstances which establishes a liability in the defendant not founded on its direct promise."

In the case at bar the record is devoid of all evidence which would tend to identify the defendant as the person with whom the telephonic conversation was had by the witness Sherman other than the evidence before referred to. It appears thereby that the witness did not recognize the voice as that of the defendant, although the witness had been present with the plaintiff at the time of the purchase of the materials from the defendant only a week or ten days before. Neither following the giving of testimony by defendant nor upon the trial was the witness recalled to identify the voice of the defendant as that of the person with whom the witness had the conversation. The defendant denied that he had any conversation over the telephone with any person with reference to the matter, and in fact it does not appear from the evidence that the conversation was had with a person at defendant's place of business nor that connection was made with defendant's place of business. The statement of the person that he was Fishman was mere hearsay and did not establish the fact, and the response that plaintiff owed him and that Fishman would not send the goods until everything was settled did not tend to identify the person answering as the defendant by reason of familiarity with the contract, but tended rather to disprove it, as concededly the material had been fully paid for when ordered, and the second order of July 27th, which was for use on other work, was accompanied by a check, and was sent to plaintiff by express immediately upon receipt of the letter giving the order. We think the evidence did not sufficiently identify the person with whom the conversation was had as the defendant, to render the testimony admissible, and that for the error in admitting the evidence the judgment and order appealed from should be reversed and a new trial granted.

[4] The appellant specifies as a further ground for reversal the admission of evidence relative to the measure of damages, and cites as supporting his contention the case of Rochester Lantern Co. v.

Stiles & Parker Press Co., 135 N. Y. 209, 31 N. E. 1018. In that case it was said:

"The cardinal rule undoubtedly is that the one party shall recover all the damage which has been occasioned by the breach of the contract by the other party. But this rule is modified in its application by two others: The damages must flow directly and naturally from the breach of the contract, and they must be certain, both in their nature and in respect of the cause from which they proceeded. Under this latter rule speculative, contingent, and remote damages which cannot be directly traced to the breach complained of are excluded. Under the former rule such damages only are allowed as the parties may fairly be supposed when they made the contract to have contemplated as naturally following its violation. Hadley v. Baxendale, 9 Excheq. 341; Griffin v. Colver, 16 N. Y. 489 [69 Am. Dec. 718]; Leonard v. N. Y., etc.; Tel. Co., 41 N. Y. 544, 566 [1 Am. Rep. 446]; Cassidy v. Le Fevre, 45 N. Y. 562."

See, also, U. S. Trust Co. v. O'Brien, 143 N. Y. 284, 38 N. E. 266. These cases are in some respects distinguishable from the case at bar, but the principle above quoted is applicable. However, as a new trial of the action must be had upon which the proof as to the damages sustained may be very different, and more definite and satisfactory, it is needless to further consider that subject at this time.

The judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

SMITH, P. J., and WOODWARD, J., concur.

JOHN M. KELLOGG, J. (dissenting). Telephone companies are performing a quasi public service under the control of the Public Service Commission, which has general supervision of "the manner in which their lines and property are leased, operated or managed, and conducted and operated with respect to the adequacy of and accommodation afforded by their service, and also with respect to the safety and security of their lines and property, and with respect to their compliance with all provisions of law, orders of the commission, franchises and charter requirements." Pub. Ser. Com. Law, § 94, as added by chapter 673, Laws of 1910.

A telephone is installed in an office for the use of the office, and prima facie a person answering a telephone office call may be considered as the representative of the office, at least so far as relates to the office business. When Sherman asked the telephone company at Monticello to put him in communication with Fishman at New York City, the company undertook to perform that duty, and it must be assumed that the connection was properly made with Fishman's office or that in some way the company identified Fishman as the man it connected with Sherman. A telephone company may not know the identity of the person who initiates the call; but, when it is asked to connect a certain individual with the caller, it is its duty to at least exercise reasonable care to see that the proper connection is made. We may therefore assume that the company connected Sherman with Fishman's office, or in some other way brought Fishman to the phone. Fishman denies that he had the conversation over the phone. He had a bookkeeper who participated in the sale; perhaps he had other employés in the office. Notwithstanding his denial, the

communication may have taken place between his office and Sherman. The telephone is in general use and business arrangements of great importance are constantly made over it. The party claiming rights upon a telephone conversation must produce some evidence that he conversed with the person sought to be charged. He need not recognize the voice, as he may not know it; he may not even have a personal acquaintance with the party called. The fact that he is doing business in the ordinary way is some evidence that the telephone company put him in communication with the party called. Any other rule would lead to great inconvenience and would make the telephone of but little actual value in business affairs. The business of the country over the telephone is transacted upon the presumption that the public service corporation is performing its duty to its patrons and the public. That presumption is some evidence that Sherman had the conversation with Fishman or his office.

The defendant knew that these plumbing materials were ordered to use on a job which must be finished by July 25th, and with such knowledge he undertook to ship them the next day. I think the damages are within the reasonable contemplation of the contract. The real question in litigation was whether the shipment was made as agreed. The defendant swears it was made the day following the purchase. If so, in the ordinary course of communication between the places, they should have been received within two days. A part of the goods arrived a week after the 17th; another part two days thereafter; some were not received at all. Neither party produces the bill of lading showing when the goods were actually shipped. There was therefore a disputed question of fact as to the time of shipment, and the verdict of the jury upon that question is not unreasonable. I favor an affirmance.

HOWARD, J., concurs.