## LEONARD v. MOWBRAY.

*Contracts—Reindemnity bond—Alteration of written instrument—Materiality of changes question of fact and not of law—Presumption that alterations made before contract signed—Burden to prove that changes made and materiality thereof—Evidence—Question for jury—Establishing identity of speaker over telephone—Evidence of oral authorization of agent to change written bond, admissible—Section 8621, General Code—Statute of frauds inapplicable—Section 8620, General Code.*

1. Where reindemnity bond indemnifying surety recited that surety was called on to assist principal in connection with completion of paving contract, and, after signing thereof by indemnitor, the clause, "all as provided in contract of even date herewith," was stricken, materiality of words stricken could only be shown by evidence of facts concerning contract, and it was error to decide as matter of law that alteration was material.

2. Alterations of a contract are presumed to have been made before signing thereof.

3. Where it was alleged by defendant and shown by plaintiff's evidence that clause in contract was stricken after defendant signed it, defendant was not required to prove such fact, but it was still incumbent on defendant to produce evidence as to materiality of alteration.

4. Whether identity of speaker over telephone is established with reasonable certainty is for jury, providing there is evidence tending to establish identity.

5. Evidence as to identity of person talked to *held* for jury, as preliminary to admission of telephone conversation.

6. Since Section 8620, General Code, specifically provides that to execute conveyance agent must have written authority, but Section 8621 omits statement that authorization must be in writing, evidence of oral authorization by indemnitor under reindemnity bond to strike phrase from reindemnity bond was admissible.

(Decided February 8, 1926.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Dinsmore, Shohl & Sawyer,* for plaintiff in error.

*Messrs. Hunt, Bennett & Utter,* for defendant in error.

HAMILTON, J. The parties stand in the same order here as in the court below. The action was on a reindemnity bond, executed by the defendant, Mowbray, to reindemnify the Chicago Bonding & Insurance Company against loss by reason of its having become surety for one Allan G. Trippeer.

Plaintiff is the Ohio receiver of the American Bonding & Casualty Company, which in turn had succeeded to the rights of the Chicago Bonding & Insurance Company. A copy of the bond in suit is as follows:

"Know all men by these presents: That F. W. Mowbray, of Cincinnati, Ohio (hereinafter called the obligor), is held and firmly bound unto the Chicago Bonding & Insurance Company (hereinafter called the Company) in the sum of ten thousand dollars ($10,000) lawful money of the United States of America, to be paid to the said Company,

its certain attorneys, successors, and assigns, to which payment, well and truly to be made, the said F. W. Mowbray, by these presents, firmly binds himself, his heirs, executors, administrators, and assigns.

"Signed, sealed and dated this 29th day of March, A. D. 1917.

"The condition of the aforegoing obligation is such that, whereas, at the special instance and request of Allan G. Trippeer, of Peru, Indiana, the said Company has executed a contract bond, maintenance bond, and statutory bond in connection with contract awarded said Allan G. Trippeer in the sum of one hundred and ninety-nine thousand dollars ($199,000.00) for the paving of 13.5 miles of concrete road in Monroe county, Michigan; and whereas, said Trippeer has been in default on said contract, and said Company has been called upon to assist in the further prosecution of said work and the financing of said Trippeer in connection with the completion of said work;

"Now, therefore, if the above bounden, Allan G. Trippeer, of Peru, Indiana, shall and does repay any and all sums advanced to or loaned for the completion of said work, and pay all charges in connection with procuring such advances and any and all premiums, costs, and expenses due the said Company for executing any and all bonds for said Allan G. Trippeer, and shall hold and keep harmless the Company from and against any and all liability, loss, damages, costs, charges, attorneys' fees, and expenses of whatever nature or kind which the Company shall or may at any time sustain, incur or be put to for or by reason or in

consequence of the Company having executed the above mentioned bonds for the completion of said work, payment of material bills and five-year maintenance, or by reason of any obligation or bond said Company may execute or have executed for the procuring of moneys to finance said work; also, all costs, expenses and attorneys' fees which said Company may be put to by reason of the prosecution or defense of any action, suit or other proceeding which may be prosecuted or commenced against Allan G. Trippeer or said Company by reason of the execution of any and all obligations now executed or to be executed in connection with said contract or its completion, then this obligation to be void, otherwise it is to be and remain in full force and effect, it being understood that on the security hereof said Company has agreed to assist, as above mentioned.

"[Signed] F. W. Mowbray.   [Seal.]
"[Seal.]        [Signed]   Chicago Bonding & Insurance Co.,

"By Albert Sabath, Vice President.
"Signed, sealed and delivered in the presence of:
"[Signed] E. S. Ennis.
"[Signed] F. J. Hartmann."

At the trial of the case the plaintiff introduced his evidence, which consisted of exhibits, including the original bond in question, and the depositions of divers persons. The bond in suit contains the following words written in with pen and ink:

"All as provided in a certain contract of even date herewith between the said Chicago Bonding Company and the said Trippeer."

A line is drawn through these words, striking

them out of the bond. The controversy in this case grows out of the striking out of these words.

ʹ The evidence of the plaintiff, as introduced by him, showed the striking out of the written words to have taken place after the signing of the bond by the defendant, but that they were stricken out upon the authority of Mowbray, given orally over the telephone to the vice president of the Company in Chicago.

At the close of plaintiff's evidence, the defendant moved for an instructed verdict, and the court granted the same, holding that, as a matter of law, the words stricken out were material to the bond, and that the identity of Mowbray had not been shown by proper evidence. Thereupon, the jury returned an instructed verdict for the defense, and judgment was entered in favor of the defendant.

Three important questions are presented here: (1) Was the matter stricken out material? (2) Was the identity of Mowbray established with reasonable certainty? (3) Was the evidence of the oral authorization admissible under the statute of frauds?

On the question of materiality, it appears from the record that the Chicago Bonding & Insurance Company executed a surety bond for the fulfillment by the above named Trippeer of his obligations to Monroe county, Mich., under a road contract for the construction of some 13 miles of road. It appears that Trippeer became financially involved, and was unable to proceed with his contract with Monroe county after entering upon the work; that he appealed to the Chicago Bonding & Insurance

Company for aid in raising additional capital to enable him to proceed with the work. The Bonding Company declined unless Trippeer would re-indemnify it. At this time, some arrangement was made between Trippeer and the Bonding Company for reindemnity, upon which the Bonding Company would aid Trippeer in securing additional financing. The record does not disclose just what this contract or arrangement was.

The evidence given in the deposition of Albert Sabath, vice president of the company, who conducted the negotiations, is to the effect that he is uncertain as to what the contract was and whether or not it was put in writing. There is other evidence tending to show that this contract was in writing and delivered to the American Bonding & Casualty Company, the successor to the Chicago Bonding & Insurance Company.

It appears that Trippeer, at the time of the negotiations, stated to Sabath that he thought he could secure his brother-in-law, F. W. Mowbray, of Cincinnati, to go on a reindemnity bond in the amount of $10,000. Sabath thereupon drew the bond in suit, and either delivered it to Trippeer or sent it by mail to Mowbray in Cincinnati. Mowbray, before signing the bond, wrote in, with pen and ink, the words:

"All as provided in a certain contract of even date herewith between the said Chicago Bonding Company and the said Trippeer."

He thereupon signed the bond and returned it to Sabath, either at the hands of Trippeer, or by mail. When the bond, with the words written in, was received by Sabath, he objected immediately, stating

that he would not receive the bond and execute the contract with those words written in. Thereupon Sabath, claiming to have been duly authorized by Mowbray, over the telephone, struck out the words, accepted the bond, and proceeded with the contract for financing Trippeer.

It is argued by counsel for plaintiff that the court was in error in instructing the verdict at the close of plaintiff's evidence for the reason that the law is that any alteration in a written contract is presumed to have been made before the execution thereof, and that the burden of proof is on the defendant to establish that the alteration was made subsequent to the signing thereof and that the alteration is material.

It is true that the law presumes alterations to have been made before the signing of a contract, but in view of the fact that the plaintiff, in his case in chief, established the fact that the alteration was made subsequent to the signature, defendant would not be required to furnish additional proof of the admitted fact. While under the evidence adduced by the plaintiff the defendant would be relieved of furnishing proof to show that the alteration was made subsequent to the signing of the bond, he would not be relieved from showing the alteration to be material, unless, as found by the trial court, the alteration was material as a matter of law, from the evidence produced by the plaintiff in his case in chief.

Counsel for plaintiff argue that the alteration is immaterial as a matter of law, as shown on the face of the instrument. The words stricken out refer to a "contract of even date." Undoubtedly

that refers to the arrangement between the Chicago
Bonding Company and Trippeer for aid in financ-
ing.  What the terms of that contract were we do
not know; they are not shown by the bond, and
are only partly explained in the deposition of the
witness Sabath.

We think it fair to presume that Trippeer had
explained to Mowbray something of the arrange-
ment, which met with Mowbray's approval.  The
terms of this arrangement may have been the thing
that influenced Mowbray to sign the bond.  Enough
has been said to show that whether or not the
words stricken out were material can only be
shown by evidence of the facts concerning the
"contract of even date."

We therefore hold that the court committed error
in deciding as a matter of law that the alteration
was material.  It was therefore incumbent on the
defendant to produce evidence on the question of
materiality.

The case of *Franklin* v. *Baker, Ex'r.,* 48 Ohio
St., 296, 27 N. E., 550, 29 Am. St. Rep., 547, is il-
luminating on the question above discussed, and is
authority in point.  See, also, *Rankin* v. *Tygard,*
198 F., 795, 119 C. C. A., 591.

This leads us to the second question: Did the
court err in excluding the telephone conversation?
The court ruled out the evidence regarding the
telephone communication, authorizing the altera-
tion of the bond, on the ground that the party
talking was not properly identified as Mowbray.
The court was in error in so holding.  The rule
as to telephone conversations is stated in 22 Cor-
pus Juris, Section 160, p. 193, and is as follows:

"In any case in which a face to face conversation between a witness and another person would be admissible in evidence, a conversation between them over the telephone is admissible, provided the identity of the person with whom the witness was speaking is satisfactorily established, but not otherwise."

In the case of *Mankes* v. *Fishman,* 163 App. Div., 789, 149 N. Y. S., 228, the court holds: "One who has held a conversation by telephone with another person stated to have been the defendant, cannot testify as to what that person said, unless he recognized his voice, or his identity has been established with reasonable certainty by other evidence."

The cases on this question are collated in L. R. A., 1918D, 715, and the weight of authority is, as held in the case of *Mankes* v. *Fishman, supra,* that the identity of the speaker over the telephone must be established with reasonable certainty. Whether or not the reasonable certainty is established is a question for the jury, provided there is evidence tending to so establish the identity.

Many cases are cited by counsel both for the plaintiff and the defendant on this point, some holding the conversation admissible, others to the contrary. Some of the cases turn on the admission by the party phoning that he is the right party, the identity of the voice, the secret knowledge of the business in hand, and many other points of identification. Each case has its own state of facts.

In the case under consideration, the record shows, in the deposition of Sabath, the following conversation:

"A. I told Trippeer that I would not execute this bond at the bank for the $20,000 loan, with that wording written in there, and the only way that we would execute the bond was the way I had originally given it to him. He said he did not understand why that was inserted, but if that was the only way I would execute the bond he would phone Mr. Mowbray and get his permission to strike it out, which he did in my presence. He telephoned Cincinnati through my office, and talked with Mr. Mowbray in my presence, and I talked with Mr. Mowbray on the telephone myself, and told him that we would not go ahead with Trippeer unless this language could be stricken out. He said: 'Well, I am only going to gamble $10,000 anyway, so you strike it out and go through with the deal.' * * *

"Q. You say he called up Mr. Mowbray in your presence? A. He did; in my office; and talked to him first.

"Q. You don't know Mr. Mowbray's voice, do you? A. No; but Mr. Trippeer talked to him. * * *

"Q. Did Mr. Mowbray tell you what moved him to sign the bond at all, in your talk? A. Yes, he said he was sorry for his brother-in-law, and he didn't have much use for Trippeer himself, but his sister was crying about Trippeer's financial situation, and Trippeer had already caused him much trouble, but he was going to gamble away $10,000.

"Q. Did he say anything about this would fix it so Trippeer would have a job and could take

care of his family?   A. I think he did say some-
thing like that; yes, sir.''

Redirect examination:

''Q. One more thing, Mr. Sabath; when you had
the conversation with Trippeer, I mean with Mow-
bray over the telephone, who got Mr. Mowbray on
the phone?   A: Mr. Trippeer placed the call right
from my office; asked our operator to get Mr.
F. W. Mowbray, at the Lumber Company, in Cin-
cinnati, Ohio.   Then the call came back, and she
said that she had Mr. Mowbray on the phone.   I
put Mr. Trippeer on, and he talked with him and
called him by his first name; talked to him about
this bond, and about me objecting to the addition
of those words—those penned words.   *   *   *

''Q. Do you remember what instructions you
gave or Mr. Trippeer gave to the telephone girl as
to getting Mr. Mowbray?   A. Just to call Mr. F.
W. Mowbray, at Cincinnati, Ohio, care of some
lumber company; I have forgotten the name.

''Q. Did Mr. Trippeer indicate that Mr. Mow-
bray was on the phone?   A. Yes; he talked with
him first, and told him that Mr. Sabath objected
to the addition of those words on that bond, and
that he wanted them removed before he would ·go
through with the deal, and then put me on the
telephone.''

While some of these questions and answers may
be objectionable, as violating the hearsay rule,
there is certainly ample, competent evidence to go
to the jury as to the identity of Mowbray.

This brings us to the last proposition, as to
whether or not the statute of frauds precludes
the offering of parol evidence, authorizing the

striking out of the words in the bond. It is claimed that such authorization would have to be in writing, and that the introduction of oral testimony is barred under the statutes.

On examination of the statutes of frauds, we find that Section 8620, General Code, provides: "No lease, estate or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned, or granted except by deed, or note in writing, signed by the party so assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."

The pertinent part of Section 8621 is as follows: "No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default or miscarriage, of another person  *  *  *  unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

It is clear that if Sabath received the authorization claimed from Mowbray, it would be lawfully authorized, unless required to be in writing, under the statute.

Section 8620, General Code, specifically provides that, to execute a conveyance, the agent must be authorized in writing. But Section 8621 makes no mention of an authorization in writing, but uses the term "lawfully authorized." If the Legislature had intended that such person's or agent's authority must be in writing, it would seem it would have put it in Section 8621, as it did in Section

8620. In the case of *Spengler* v. *Sonnenberg,* 88 Ohio St., 192, 102 N. E., 737, 52 L. R. A., (N. S.), 510, Ann. Cas., 1914D, 1083, the court says in the third paragraph of the syllabus:

"Where the express authority of an agent to sign an agreement in writing for the sale of lands rests in parol, the proof must be clear and convincing not only of such parol authority, but also that the authority was such as to permit the inclusion of all of the material terms which are embodied in the instrument."

In the course of the opinion, at page 199, (102 N. E., 738), Judge Johnson said: "And while the weight of authority seems to sustain the proposition that special authority to an agent to enter into a written contract may be verbally conferred, the proof must be clear and decisive, not only of such parol agreement, but that the agent had authority to make all of the terms for his principal which he includes in the written contract."

It therefore appears from this decision that, notwithstanding the provision of Section 8620, General Code, that in the execution by an agent of an instrument conveying land the agent's authority must be in writing, the agent can make and sign a binding written agreement for the sale of land. This would seem to be decisive in principle of the question here, and especially so where the statute, Section 8621, omits the statement that the authorization must be in writing.

For a full discussion of this question, see 27 A. L. R., 618. In one of the decisions there treated we find this terse statement:

"In some states statutes have been passed which

require the authority of an agent to make a sale of land, or other contracts within the purview of the statute of frauds, to be in writing.   In the absence of such a statute, the common law prevails; and while the contract for the sale of land, to be enforceable, must be in writing signed by the party to be charged, or by someone duly authorized by him, the authority of the agent to sign the writing may be created by parol.''

The authorization for the striking out of the words may be shown by parol, and the statute of frauds is no bar.

The judgment will be reversed, and the cause remanded for a new trial.

*Judgment reversed and cause remanded..*

BUCHWALTER, P. J., and CUSHING, J., concur.