Leon N. Armer, J.
The defendant Mazzone seeks suppression of identification testimony to be given upon trial by Investigator Kenneth Troidl of the New York State Police. *966 Such evidence will be to the effect that Investigator Troidl is of the opinion that a voice recorded upon execution of an eavesdropping warrant on August 8, 1975 is that of Mazzone. Mazzone and his codefendant, Canarrozzo, were indicted for having on that date engaged in promotion of gambling, second degree, a class A misdemeanor. The sole support for the indictment appears to be a recording of an intercepted conversation between these defendants, obtained pursuant to an eavesdropping warrant.
Defendant’s claims primarily distill to a contention that since Troidl’s opinion will be based in part upon his having telephoned defendant at the latter’s home, and obtained a voice exemplar thereby without theretofore advising defendant of his constitutional Miranda warnings, Troidl’s proposed testimony has been so tainted as to have become inadmissible.
Instant indictment together with many other indictments involving numerous other accused persons flowed from the execution of two wire-tap orders; the first executed July 15, 1975 terminating July 18, 1975 on a telephone numbered 835-2608 listed to the residence of one Caputy, also indicted, at 348 Woodgate Avenue, Town of Tonawanda, New York; and the second executed August 4, 1975 terminating August 10, 1975 on a telephone numbered 681-3513 listed to one Seigel, apparently a fictitious name, located at 710 Lancer Court, Apartment D, Depew, New York.
The evidence seized on the first interception has been heretofore ordered suppressed upon memorandum of this court filed October 21, 1976 for failure of the executing officers to promptly obtain sealing of tapes of intercepted conversations. Applications to suppress evidence seized by the second interception have been denied.
The voice claimed to be Mazzone’s was heard on one occasion during the first interception, speaking from Caputy’s telephone to some person, apparently the speaker’s wife, stating that he "needed money quickly”. That call was placed to a number listed to the residence of a person bearing the same name as defendant at 256 Evergreen Street, Town of Tonawanda, New York. Later that day Troidl followed a person, now known to him to be defendant, from the building in which Caputy’s telephone was located to 256 Evergreen Street. At some later date prior to August 10, 1975 Troidl followed Mazzone from 256 Evergreen Street to and into a dairy bar, in which Troidl heard Mazzone speaking for a short *967 period of time to another person. On another occasion, the date of which does not clearly appear, Troidl was in the presence of Mazzone at a "Three Coins Restaurant” at which defendant worked as a bartender, and although he did not clearly recall so at this hearing, believes he heard Mazzone speaking on that occasion.
At the time Troidl followed defendant to the dairy bar, defendant was operating a motor vehicle registered to him.
In the conversations intercepted during the second wire-tap, the person speaking whom Troidl believes to have been defendant identified himself as "256”.
Upon the interception of the incriminating conversation of August 8, 1975, Troidl was of the opinion and believed the person so speaking to be this defendant Mazzone. On some occasion shortly thereafter no later than on August 11, 1975 Troidl telephoned defendant’s residence. His purpose in so doing was to "make absolutely sure in [his] mind” that the person whose voice he believed was Mazzone was indeed his. Troidl told the person answering that "[his] car was ready.” The party answering replied in substance "What car are you talking about? I don’t have a car at the station.” The conversation was terminated by Troidl’s saying that he must have called the wrong number. No recording was made of the call, but in Troidl’s opinion the person so answering was the person participating in the incriminating conversation and was this defendant Mazzone.
The evidence obtained by Troidl’s ruse was evidence of "identifying characteristics”, rather than an incriminating statement. By no stretch of the imagination can it be assumed that a person answering a telephone far removed from the physical presence of the questioning officer is the object of a "custodial interrogation” requiring Miranda warnings. (Cf. Oregon v Mathiason, 429 US 805.) The claim of violation of defendant’s Fifth Amendment rights is untenable.
Here the defendant was tricked into involuntarily furnishing a voice exemplar, unfortunately not preserved by a recording thereof. That he could have been compelled to furnish such an exemplar by a Grand Jury or upon appropriate other application is clear. (United States v Dionisio, 410 US 1, 6, 7; Matter of District Attorney of Kings County v Anthony G., 48 AD2d 576, 580.) A tape recording of his voice could have been compelled. (State of New Jersey v McKenna, 94 NJ Super 71; see, also, Gilbert v California, 388 US 263; Schmerber v *968 California, 384 US 757; Holt v United States, 218 US 245; United States v Wade, 388 US 218.)
The exemplar obtained was not an "effect” or tangible property defined as evidence in CPL 710.20 (subd 2), nor obtained by "overhearing” or "wiretapping” (CPL 710.40, subd 4) flowing as it did from confrontation. It was however, although aural rather than visual, an "observation of the defendant * * * upon some * * * occasion relevant to the case”, now subject to pretrial suppression if inadmissible. (CPL 710.20, subd 5, as amd by L 1976, ch 8.)
If properly obtained, the evidence gained by Troidl would be admissible (People v Dunbar Contr. Co., 215 NY 416; see, also, Woodruff v Benesch, 112 Misc 489; Mankes v Fishman, 163 App Div 789) as one of the bases for the witnesses’ opinion as to the identity of the voice heard on a telephonic communication. (See Richardson, Evidence [10th ed], § 364, subd [fj.) The proscription against "bolstering” (cf. People v Forest, 50 AD2d 260) would not be applicable, since the proffered testimony would be that of the witnesses’ opinion and the support therefor rather than a claimed observed ultimate fact.
Here, however, the entry into defendant’s home of the officer by means of the reach afforded him by the telephone must be deemed a seeking out or search for the evidentiary material obtained. Had the conversation been recorded, and thus available in physical form for reproduction to the trier of the facts, no one would question that such was brought out from an area in which defendant’s security is constitutionally guaranteed. (US Const, 4th Amdt.) No exigencies existed here making the course followed by the officer imperative, and " Tt is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.’ ” (See Coolidge v New Hampshire, 403 US 443, 454, 455.) Nor is the evidence obtained such as would have been "inevitably discovered” absent judicial or Grand Jury sanction for seizure. (See People v Fitzpatrick, 32 NY2d 499, 507.)
Suppression of the proposed testimony of Investigator Troidl relating to his telephone conversation with defendant on and between August 8, 1975 and August 11, 1975 and its use as evidence in chief by the prosecution to support Troidl’s identification of Mazzone as a participant in any telephone conversation upon which this indictment is grounded must be suppressed.
Suppression of evidence obtained on execution of the first *969 search warrant has been heretofore ordered by memorandum of this court dated October 21, 1976. Use of Troidl’s testimony as to any claimed speaking of Mazzone overheard thereon is inadmissible as evidence in chief on this indictment thereby.
By reason of the foregoing, defendant’s claims of entrapment and violation of minimization requirements and Sixth Amendment rights are not reached.
This ruling, however, does not extend to the total preclusion of testimony of Troidl as to his recognition of the voice heard as that of Mazzone. It has been shown by clear and convincing evidence that Troidl had an opinion based upon reasonable grounds that the voice was Mazzone’s prior to calling Mazzone’s home, and, as he testified, he made the call to "make sure beyond any doubt in [his] mind” that it was indeed Mazzone’s voice he had heard. As a police officer, Troidl may, in the absence of the judicial determination herein on this question apparently here first presented, have at that time properly deemed his action appropriate. (See People v Morales, 37 NY2d 262, 271.) The improper action did not reach back to destroy his already held opinion, although the basis therefor, the speech of the defendant at the dairy bar and Three Coins restaurant may be given considerably less weight by a jury. As so limited, Troidl’s testimony as to identification of defendant may be heard.