*799 OPINION OF THE COURT
Daniel F. McMahon, J.
Defendant is charged in a two-count indictment with the crimes of robbery, first degree, and criminal possession of a weapon in the fourth degree involving the alleged theft of moneys from a bread deliveryman on September 22, 1979 while displaying what appeared to be a pistol. Thereafter, on November 7, 1979 defendant gave statements, first to a detective and then a video taped statement to a Bronx Assistant District Attorney, admitting in detail all of the allegations, but denying that he used either a real or imitation pistol in the course of the robbery. Defendant’s attorney moved for a Huntley hearing and defendant elected to proceed to trial without a jury. The hearing and nonjury trial were held jointly by consent of all parties. The combined hearing and nonjury trial was held on March 19, 1980 and March 20, 1980. The People called Detective Stanley Schiffman of the 47th Precinct, Bronx Assistant District Attorney Eugene Cordaro, John Duffy (the complaining witness), and an eyewitness, Christopher Haynes. Defendant testified on his own behalf and the defense also called Detective Robert Orr of the 47th Precinct.
There is almost no factual disagreement in this case, other than the core issue as to whether defendant "[d]isplay[ed] what appeared] to be a pistol” (first degree robbery, Penal Law, § 160.15, subd 4). If not, then he would be guilty of the lesser crime of robbery, third degree. The Huntley issue poses an interpretation of People v Rogers (48 NY2d 167).
The victim, John Duffy, was an employee of Wonder Bread Bakeries. The robbery took place at about 1:00 p.m. on September 22, 1979, a clear, sunny afternoon, near the intersection of Laconia Avenue and 225th Street. Duffy double-parked his delivery van on Laconia Avenue within several car lengths of its intersection with 225th Street to make a delivery to a nearby "Disco Deli”. He then re-entered his van from the open right-hand side, turned on the engine and was about to drive forward to his next delivery when he saw a man (later identified as defendant) enter his truck from the right side. Defendant had a small black pistol in his right hand. Mr. Duffy observed the defendant and the gun for approximately three seconds before he was directed by defendant to look straight ahead. He then followed defendant’s instructions and drove a distance of several blocks into an area designated as *800 the Edenwald Project at which point defendant took both his route receipts and his personal funds (approximately $500).
Mr. Duffy candidly conceded he did not see the defendant’s gun other than when defendant entered his delivery van. However, he gave a detailed description in court of the perpetrator; to wit, male, black, 6 feet 2 inches or 6 feet 3 inches, 190 pounds, balding in front, mustache, wearing a tan jacket and dark pants. He estimated the length of the gun’s round, straight barrel as approximately 3 inches to 4 inches and stated the gun was held by defendant at a distance of approximately 3 to 4 feet and that at no time was the gun pushed against him.
Christopher Haynes, a 12-year-old youth who lives in the Edenwald Project with his mother, purchased some items from the "Disco Deli” for his mother, and while standing at the corner of Laconia and 225th Street, preparing to cross Laconia, looked to his left and observed defendant entering the double-parked bakery truck carrying a gun in one hand which was pointed at the driver. He could not recall in which hand defendant held the gun or whether it was large or small; he did recall it was black. Christopher Haynes then continued towards his apartment in the project where he and an unidentified friend saw the same bread truck come to a stop and defendant get out. The driver also left the truck, walking in a different direction. Defendant walked by, gave each of the boys $1 and told them to say nothing. Christopher Haynes then joined other youths in stealing some loaves of the bread from the unattended truck. After taking a loaf for his mother, and walking in the direction of their apartment, he passed under a window on the second floor of one of the buildings in the project; defendant pointed a gun at him from the window and directed him to throw the loaf of bread up to him. Christopher Haynes then went to the police.
Detective Robert Orr, of the 47th Precinct, was initially assigned to the investigation of this robbery. Defendant became a suspect in the case. As it was known at the precinct that Detective Stanley Schiffman had personally known Johnson and members of his family over a period of years (having arrested him some 10 years previously), Detective Orr asked Detective Schiffman, who was a member of the Anti-Crime Unit at the 47th Precinct, to question defendant concerning the robbery. Accordingly, Detective Schiffman contacted defendant and his mother, personally and by telephone. Defendant *801 said he wanted to get his "things in order” before going to the precinct; Detective SchifFman agreed and a tentative interview date was set. On November 7, 1979, prior to the scheduled date, defendant voluntarily went to the 47th Precinct and asked to speak to Detective SchifFman.
Detective SchifFman then advised defendant he was a suspect in several crimes, including the instant robbery. He read defendant his rights; defendant waived them and admitted committing two robberies, including this one, but denied any other criminal involvement. He gave Detective SchifFman a detailed account of the commission of this robbery, admitting the forcible theft of moneys from Mr. Duffy, but denied using a gun (stating he had used a contractor’s "T” square).
Detective SchifFman denied on cross-examination having any knowledge of a pending charge against defendant of criminal trespass.[1] He stated affirmatively that if he knew defendant was represented by counsel in another criminal matter he would have had him call that attorney. Defendant’s account differed on this point; he asserted that at some point during his conversation with Detective SchifFman the subject of the criminal trespass charge was discussed. The court finds Detective Schiffman’s recollection is accurate and that under all the circumstances the police were unaware there were pending charges against defendant or that he was represented by an attorney in Criminal Court, Bronx County. Detective Orr testified he did not believe there was even a copy of defendant’s "rap sheet” in his investigation file. Detective Schiffman’s only contact with the case arose out of his known familiarity with the defendant and his family; he was not in charge of the file jacket or privy to its contents.
Following his conversation with Detective SchifFman, defendant further agreed to be questioned by an Assistant District Attorney which event took place shortly after 8:00 p.m. that evening in the Bronx District Attorney’s office in the courthouse in the presence of an official stenographer and Detective SchifFman. He again recounted in detail his involvment in the robbery after receiving Miranda warnings from Assistant District Attorney Eugene Cordaro. The entire proceeding, which lasted approximately 15 minutes, was recorded on video *802 tape.[2] Assistant District Attorney Cordaro stated on cross-examination that he did not see defendant’s "rap sheet” that evening. However, in response to a hypothetical question by defense counsel, he stated he would have questioned defendant even if he had knowledge defendant was represented by an attorney in an unrelated pending criminal case.
Defense counsel urges suppression of the oral statements made to Detective Schiffman and the video taped statements to Assistant District Attorney Cordaro predicated on the recent Court of Appeals decision in People v Rogers (48 NY2d 167) claiming that it stands for the proposition that once a person is represented by counsel in any pending criminal matter, he cannot in the absence of a waiver in the presence of his attorney be questioned by law enforcement personnel regarding that charge or any other criminal matter. This asserted broad and sweeping interpretation of Rogers warrants a full examination of the reasoning and determination in that case even though this issue might well be considered moot in the instant case as defendant testified at the trial and, in essence, gave the same detailed admissions related previously to Detective Schiffman and Assistant District Attorney Cordaro on the afternoon and early evening on November 7, 1979.
In Roger (supra), the facts[3] show that defendant was convicted for the robbery of a liquor store on February 7, 1975. On December 11, 1975, approximately 10 months later, the victim identified a photograph of defendant to the police. On December 16, 1975, a police officer was given instructions to arrest defendant, then 16 years of age. He went to defendant’s house; defendant’s mother answered the door. Defendant was told he was being arrested for the February 7, 1975 liquor store robbery, handcuffed and taken to police headquarters. There he was taken to an interview room where he was handcuffed to a desk and given his rights. Defendant replied that he "had an attorney” on two unrelated criminal charges, but that he was willing to waive his presence and speak to the police. He was questioned for about two hours before a telephone call was received by the robbery squad from a Mr. Goldstein who spoke to one of the detectives, said he repre *803 sented defendant and that he did not want defendant questioned about the liquor store robbery. The investigating detectives acceded to this request but for another four hours continued questioning defendant concerning unrelated criminal activities. Defendant was handcuffed during that time. Thereafter, while police were doing paper work processing the robbery charges against defendant, he uttered an inculpatory statement which was overhead by one of the detectives.[4]
As a prologue of the legal principles the court stated: "The threshold issue is whether once a defendant is represented on pending matters, the police may question the defendant on items unrelated to the subject of that representation after the defendant, in the absence of counsel, has waived his rights.” (People v Rogers, supra, p 170.) The court then traced the history and evolution of two lines of cases; one as reflected in People v Arthur (22 NY2d 325) and reaffirmed in People v Hobson (39 NY2d 479) and the other as stated in People v Taylor (27 NY2d 327) and People v Hetherington (27 NY2d 242). The Arthur and Hobson cases clearly stand for the proposition that once a defendant is represented by an attorney he may not, in the absence of a waiver by defendant with his attorney present, be questioned by the police concerning that crime and further that there is no requirement defendant or his attorney affirmatively assert this right. Conversely, the Taylor and Hetherington cases permitted the police, as an exception to Arthur, to question a defendant represented by counsel about unrelated crimes.
After discussing these cases and several more recent decisions by the Court of Appeals the Rogers majority stated: "We today recognize that the Taylor rule is inconsistent with the principles enunciated in Hobson and declare that once a defendant is represented by an attorney, the police may not elicit from him any statements, except those necessary for processing or his physical needs. Nor may they seek a waiver of this right, except in the presence of counsel.” (People v Rogers, 48 NY2d 167, 173, supra.) The Rogers decision begins with the following (at p 169): "We hold today that once an attorney has entered the proceeding, thereby signifying that the police should cease questioning, a defendant in custody may not be further interrogated in the absence of counsel.” In order to fully understand the import and actual holding of the *804 majority in Rogers, it is necessary to further analyze the cases discussed in the decision and then applied to the facts.
In Taylor (supra), the police were investigating a homicide committed during the course of a robbery on March 22, 1968. On April 10, 1968 an investigating detective learned that defendant (and two others), were in custody charged with a robbery having a similar modus operandi. Thereafter, on April 16, 1968, defendant was brought before an Assistant District Attorney in Bronx County and, was questioned concerning the homicide-robbery, although the authorities knew he was represented by counsel in the other robbery for which he was in custody. In its decision, the court reaffirmed that the "thrust of our prior decisions is that once the police learn that an attorney has entered the proceeding, it is offensive * * * to permit further questioning * * * [but] the rule does not obtain unless and until the police or prosecutor learn that an attorney has been secured to assist the accused in defending against the speciñc charges for which he is held. (People v Taylor, 27 NY2d, at p 332; emphasis in original.) Thus, Taylor clearly held that where a defendant is being held on charges, for which he was represented by counsel, he could not be questioned by the police regarding that crime but could be questioned concerning unrelated criminal matters. However, even in Taylor there was an expressed recognition the exception would not apply if there was actually a relationship between the charges or if defendant was being held on a pretext for the purpose of investigating an unrelated crime.
In Hobson (39 NY2d 479, supra), defendant was convicted of a February 7, 1973 robbery of a delicatessen in Suffolk County. On September 26, 1973, while incarcerated in the Suffolk County jail on unrelated charges, but having been identified as a suspect in the delicatessen robbery, he was assigned counsel, placed in a lineup, and identified by the victim. After his attorney later departed, he was questioned by a detective regarding the robbery. The court appropriately held his constitutional rights were infringed under Arthur (22 NY2d 325, supra) (although recognizing Taylor [supra] in dicta).
The Rogers case (48 NY2d 167, supra) also discussed three of its more recent decisions before reaching a conclusion that Taylor (supra) was inconsistent with Hobson (supra). In People v Ramos (40 NY2d 610) defendant was in custody awaiting arraignment on drug charges. He was represented at his *805 arraignment by privately retained counsel, who then affirmatively advised a detective (who was assisting in an unrelated homicide investigation) that he had directed defendant not to make any statements to the police. Defendant was thereafter taken to the District Attorney’s office and questioned concerning the homicide which had occurred approximately seven months previously. The court held such questioning was illegal, stating as follows (at p 617): "In the instant case, consistent with Taylor, we do not hold that defendant’s right to counsel attaches by the mere fortuity that he was represented by counsel on an unrelated charge, but rather our ruling is based on the attorney’s affirmative and direct action relative to the interrogation which was about to be commenced in connection with the liquor store shooting.” (Emphasis supplied.) Similar police questioning was also held improper in People v Carl (46 NY2d 806) and People v Ermo (47 NY2d 863) (memorandum decisions). In Carl the court found (p 808) "the charges were sufficiently related” as the incidents had occurred within about one week, and both involved burglaries at the same location. In Ermo, defendant was arrested for an assault on March 13, 1972 and following appointment of counsel on that charge was questioned on March 14, 15 and 22, 1972 regarding both the assault charge and an earlier homicide (August 3, 1971) investigation. Admissions concerning the homicide were suppressed as "the police exploited concededly impermissible questioning as to the assault for the purpose and with the effect of advancing their interrogation on the homicide charge.” (People v Ermo, supra, p 865.)
Thus, in all of these cases, commencing with Taylor (27 NY2d 327, supra) and concluding with Ermo (supra) there is a common fact pattern, namely, a defendant charged with a specific crime, in custody and represented by an attorney on that charge, is interrogated by law enforcement concerning "unrelated crimes”. The Court of Appeals has now ruled in Rogers (supra) that under these circumstances defendant has been protected from such in-custody questioning both as to the charge on which he is represented by counsel and as to other criminal matters, related or not.
However, Rogers (48 NY2d 167, supra) does not hold, as urged by defense counsel in our case, that there is a sweeping bar to all questioning of a suspect once he has been represented by counsel on any pending criminal matter. Such a construction is not supported by a factual analysis of Rogers, *806 by the decisional law expressed therein or by logic. In Rogers (supra), defendant did not even challenge the trial court’s refusal to suppress statements made by defendant prior to the telephone call made by his attorney in which he stated he represented defendant on the liquor store robbery charge, despite the fact that he represented defendant on two other pending charges at the time defendant was arrested. (See People v Rogers, 48 NY, supra, at p 170, n 1.) All of the decided cases in these areas involve questioning of a suspect while he is in custody for another crime on which he is represented by counsel. This pattern is implicit in the statement declaring Taylor (supra) inconsistent with Hobson (39 NY2d 479, supra), viz.: that "the police may not elicit from him any statements, except those necessary for processing or his physical needs.” (People v Rogers, supra, p 173.) These words assume situations where defendant is being questioned while in custody and represented by counsel on that matter. Any rule precluding questioning of a suspect merely because on some previous occasion he was represented by counsel on an unrelated criminal action would be unworkable. Where would a line be drawn in such cases? This court may take judicial notice that in many cases, especially in the overly congested criminal courts in the City of New York, cases may go unresolved for years or indefinitely. Should a defendant in such a case be immunized forever from being questioned regarding his knowledge of a crime? Furthermore, should a "pending” case include one which is on appeal, or which has been appealed and reversed for a new trial?
This court must conclude that no such unreasonable result was intended in Rogers (supra). Here defendant was contacted by Detective Schiffman, agreed to surrender at a later date, and thereafter voluntarily appeared at the 47th Precinct where he was advised of, and waived his rights, and thereafter gave detailed accounts (including denial of using any weapon) to Detective Schiffman and Assistant District Attorney Cordaro. Neither Detective Schiffman nor Assistant District Attorney Cordaro was aware defendant had been arrested some seven months previously for an unrelated misdemeanor charge (or that it was still pending). The mere fact that defendant was arrested on February 26, 1979 and represented there by the same defense counsel later assigned in this proceeding does not bar his questioning on November 7, 1979, as he was not then represented by an attorney on the Septem *807 ber 22, 1979 robbery nor was he questioned on that subject while being held in custody on any other charges for which he was represented by an attorney. Accordingly, this case is fully distinguishable from Rogers (supra), and the motion to suppress the statements is denied.
The court concludes the People have proven beyond a reasonable doubt that on September 22, 1979 defendant displayed what appeared to be a pistol and forcibly stole a sum of money from John Duffy. Accordingly, he is adjudged guilty on count 1, robbery in the first degree under subdivison 4 of section 160.15 of the Penal Law and further adjudged guilty on count 2, criminal possession of a weapon in the fourth degree under subdivision 2 of section 265.01 of the Penal Law. Defendant will be sentenced for the crime of robbery in the first degree. The second count will be dismissed as the crime of criminal possession of a weapon in the fourth degree is a lesser included offense of robbery, first degree, under the facts in this case.

. The court took judicial notice that defendant was arrested on February 26, 1979, charged with the crime of criminal trespass in Bronx Criminal Court, and represented on that charge by the same attorney who represents him in this case.

. Defendant was advised that it was being video taped about half way through the questioning.

. As gleaned from the decision and the respective briefs contained in the record on appeal.

. The court ruled that statement was not "spontaneous” as it was a product of and induced by "psychologically coercive influence of the police tactics”.