OPINION OF THE COURT
Stanley L. Sklar, J.
The issue is whether a murder confession must be suppressed when the police and the District Attorney investigating the murder were unaware that the defendant had absconded from the earlier trial of an unrelated criminal matter and still had counsel representing him on the unrelated matter.
The defendant, Wilfredo Cardona, is charged with the crime of murder in the second degree. He is accused of stabbing Nelson Perez and causing his death.
Cardona has moved for an order suppressing statements made by him to Detective Carlos Toulon and Assistant District Attorney Richard Girgenti on January 16, 1980.
The defendant urges that the statements must be suppressed because of the broad rule that he argues was enunciated in People v Rogers (48 NY2d 167). He argues *1095 that Rogers prohibits custodial interrogation of a defendant on one criminal matter, despite Miranda warnings and the waiver of rights, unless his attorney is present, if he is represented by that attorney on any pending criminal matter and if the police have any knowledge, whether actual, “should have known”, or imputed knowledge of that representation.
FACTS
Nelson Perez was murdered on December 27,1979. Detective Carlos Toulon, of the 25th Precinct Detective Unit was assigned to the investigation of the murder.
In the course of his investigation, he learned that the suspected murderer was known by the nicknames of “rag-picker” and the “clothing salesman”. He also received a description of the alleged perpetrator, which, however, did not set forth any unique features.
Toulon’s investigation included inquiry of individuals in the area around 110th Street between Lexington and Third Avénues. He did not, however, obtain the perpetrator’s name or any further description.
Detective Emerson assisted in the initial investigation on the day of the murder. He learned from Hector Ayala that the suspect had frequently stated that he had killed a man and was on parole for the killing. Emerson gave Toulon that information. Toulon had no other information concerning the Perez murder suspect’s prior criminal background.
On January 16, 1980, Detective Toulon received a telephone call. As a result of that call, he went to 103rd Street between Lexington Avenue and Park Avenue in New York County. Toulon found the defendant there and arrested him at about 5:00 p.m. He first learned of the defendant’s actual name at the stationhouse.
Toulon ascertained that Cardona understood English. He then read Cardona full Miranda warnings from the New York City Police Department’s standard arrest form. Car-dona expressed his understanding of the warnings and he affirmatively waived his rights.
*1096 Toulon then questioned Cardona, who gave a signed statement confessing to the murder.
Toulon then called the District Attorney’s office and asked that an Assistant District Attorney be sent to question Cardona.
Cardona testified that he asked Toulon to get a message to a neighbor, to convey to his wife, Edith Marsala. He claimed that Toulon called the 23rd Precinct at about 6:00 p.m. to request the delivery of the message, and that while on the phone, Toulon learned that Cardona had a warrant outstanding. He claimed that he and Toulon discussed the warrant. I do not credit the defendant’s testimony on this point for several reasons, including Cardona’s own testimony that his wife had arrived at the precinct prior to the time when he claimed that Toulon placed his call.
Assistant District Attorney Richard Girgenti came to the precinct and conducted a videotaped interview of Cardona. The taping started just before 10:00 p.m. Girgenti gave full Miranda warnings to Cardona, who said that he understood the warnings and agreed to be questioned. Cardona made inculpatory statements regarding the killing of Nelson Perez. The videotape was played during the suppression hearing.
The next morning, January 17, 1980, Toulon obtained Cardona’s NYSIS report and first learned that Cardona was wanted on a Bench warrant in connection with an attempted murder. Toulon asked Cardona what it was about. Cardona said it had already been taken care of.
The Bench warrant is explained as follows.
Cardona was tried in New York County in June, 1979 on a charge of attempted murder. He absconded during the trial. A Bench warrant was issued and the trial continued in his absence. He was convicted. The case was presented on behalf of the People by Herculano Izquierdo. Cardona was represented at the trial by Leon Polsky, Esq., by Robert Stein and Juan Campos. Since Cardona had absconded, sentence was not pronounced. Also, an application by defense counsel for a mistrial was continued and not ruled on until May, 1980. Assistant District Attorney Izquierdo *1097 advised detectives involved in that case, and the warrant squad, that a Bench warrant ha<¿ been issued. Counsel stipulated that the fact that a Bench warrant is outstanding is available to all detectives in the City of New York and that any police officer in the City of New York could have obtained such information.
CONCLUSIONS OF LAW
Right to Counsel
The defendant urges that the statements made by him to Officer Toulon and to Assistant District Attorney Girgenti must be suppressed because he was still represented by an attorney in the unrelated attempted murder case in which he had absconded during the trial. As noted above, his argument is based upon his interpretation of the decision of the Court of Appeals in People v Rogers (48 NY2d 167, supra). He claims that Rogers mandates suppression when the questioning officer: (1) has actual knowledge of the defendant’s representation by counsel in an unrelated criminal proceeding, or (2) would have, with the exercise of due diligence, acquired such knowledge, or (3) when the knowledge of others in the law enforcement system of such representation must be imputed to the questioner.
Actual Knowledge
Although Rogers held that the police are barred from questioning a defendant who is known to be represented on an unrelated matter, unless that counsel is present,[1] that holding does not govern this case. Toulon did not have actual knowledge, prior to the questioning on January 16, 1980, of the defendant’s representation by counsel in the other pending criminal matter, or indeed, of the pendency of any other criminal matter. Cardona conceded, and the court also finds, that Assistant District Attorney Girgenti likewise had no actual knowledge, prior to the videotape session, either of such representation or of the pendency of such other criminal matter.
*1098 Due Diligence Knowledge
There is, likewise, noiactual basis for applying Cardona’s second point to this case. This “should have known” or in the exercise of due diligence, “would have known” argument of defendant was made with respect to Toulon only. As argued, did Toulon come across anything, which, but for his alleged blinding himself to something obvious, would have resulted in his learning that Cardona was represented by counsel in another criminal matter or even had another criminal matter pending? I find as a matter of fact that he did not come across any such illuminating information.
In essence, defendant argues that as an experienced detective, Toulon was aware of a fact, and should have taken steps which would have given him actual knowledge that Cardona was represented in another pending criminal matter.
Defendant points to three facts or steps which he contends should have alerted Toulon.
First, Emerson related to Toulon the information from Ayala that the suspect had told people that he had committed a murder and was on parole.
Second, the information respecting Cardona’s warrant was available to all detectives.
Third, the defendant argues that the names “ragpicker” and “clothing salesman”, together with such description as was given to Toulon of the perpetrator should have been fed into the police “catch” computer.
The argument is without merit. There was no obligation on Toulon’s part to take the suggested steps. I find, as a matter of fact, that there was no effort made by Toulon to disregard or overlook any information. Accordingly, the defendant’s second argument does not come into play in this case.[2]
*1099 Imputed Knowledge
Defendant argues that knowledge of Cardona’s representation by counsel in the unrelated case must be imputed to the prosecution, “Because the police involved in both cases are New York City Police and because the prosecutors in both cases are New York County District Attorneys, the knowledge of the police and the Assistant District Attorney in the first case is imputed to the police and the District Attorney in the instant case.”
The argument is without merit.
Although this portion of defendant’s motion is essentially grounded upon People v Rogers (48 NY2d 167, supra), defendant does not claim that Rogers requires such imputation of knowledge from the police or the Assistant District Attorney in Cardona’s first case to the arresting officer (Toulon) or the Assistant District Attorney (Girgenti) who questioned Cardona in this case.
Rather, this argument of defendant is grounded solely upon People v Maynard (80 Misc 2d 279). Maynard is inapposite. In Maynard, a criminal action was tried three times. On the third trial, the prosecution successfully quashed a subpoena duces tecum and resisted an oral request for the “yellow sheet” of a key prosecution witness. Instead, the prosecution produced minimal information, but information that indicated that the prosecution must have known more. If the yellow sheet had been produced, the defendant would have learned of facts bearing upon the witness’ credibility and even upon his very capacity as a witness. Moreover, there had been a “persistent demand” by defendant for the yellow sheet (80 Misc 2d, at p 287). Of even greater importance, the failure to produce the sheet created problems of constitutional dimensions under Brady v Maryland (373 US 83). Accordingly, Maynard involved a failure of the prosecution to meet its obligation to answer two affirmative demands — the specific “persistent demand” by the defendant for the yellow sheet and the overriding constitutional demand, as set forth in Brady, that the prosecution furnish exculpatory materials to the defense.
*1100 The court has also considered People v Bevilacqua (45 NY2d 508). In that case as well, an affirmative request was made of the police and, as in Maynard, the response was inadequate.
For another instance of a failure of the prosecution to fulfill an affirmative obligation, see People v Briggs (38 NY2d 319).
By way of contrast, the instant case does not involve any affirmative inquiry nor does it involve a failure of the prosecution to respond to an ever present inquiry or demand imposed by law to protect the defendant’s rights. Rather, this case involves efforts by a police officer to do a normal investigative job and to apprehend a suspect.
We must always have, as defendant urges, a special concern for an accused’s right to counsel. As the Court of Appeals said in Rogers (48 NY2d 167, 173, supra): “the attorney’s presence seeks to equalize the positions of the accused and sovereign, mitigating the coercive influence of the State and rendering it less overwhelming.”
Cardona rejected the assistance of counsel. He was given Miranda warnings twice and he twice knowingly and voluntarily waived his rights. In Rogers, the defendant told the police that he had an attorney, the attorney spoke with the police and prohibited questioning — but the police then questioned the defendant on another matter. Here, Cardona did not tell the police or Assistant District Attorney Girgenti that he had an attorney. No attorney sought to prohibit questioning. On the contrary, hours after all questioning had ceased, when Toulon was processing the defendant for arraignment, and told Cardona that he was wanted on a warrant, Cardona insisted that it had been taken care of. So, even at that late stage, Cardona sought to push away the possibility of police knowledge of his representation on another criminal matter that was still pending.
Rogers does not promulgate a per se rule that when a defendant is represented by counsel in a criminal matter, and that matter is still pending, that counsel will be deemed, by operation of law, to have appeared for an accused in a new criminal matter when the police and the *1101 prosecutors have no knowledge (whether actual or “due diligence” or imputed) of the accused’s representation in, or the pendency of, the earlier criminal matter. Rogers surely does proscribe custodial interrogation of a defendant, without his attorney being present, when the questioner is aware that the defendant is represented by counsel on unrelated pending criminal matters. The court need not, and does not, speculate whether cases may arise in which, as the defendant contends, the questioner cannot ignore knowledge at his footstep or knowledge that must be imputed to the questioner. It is sufficient to hold that the factors upon which defendant relies to urge the presence of due diligence and imputed knowledge (and which would give rise to such knowledge in most cases) are inadequate, under the circumstances of this case, to support a finding that his questioners knew or should have known that the defendant had any other pending criminal matter or that he was represented on that unrelated matter.
However, the court need not, and does not, attempt to define the full ambit of Rogers.[3]
It is sufficient that the court must hold that Cardona, who had wrongfully absconded from his criminal trial, while represented by counsel, did not forever immunize himself from custodial interrogation in a new criminal matter in which Toulon and Girgenti had no knowledge of any sort of his representation in that matter or of the continued pendency of that criminal matter, and when his interrogation occurred after Miranda warnings had been given and after he had knowingly and voluntarily agreed to such interrogation.
The defendant’s motion is denied.

. See People v Lynes (49 NY2d 286,293, footnote); compare People v Callabrass (458 F Supp 964) in which forgotten knowledge of representation by counsel was held to require suppression. Contrast People v Johnson (103 Misc 2d 798); People v Seymour (104 Misc 2d 482).

. I note, in passing, that there was no proof whatsoever that the facts or steps which defendant urges should have alerted Toulon, would have given Toulon knowledge that Cardona had an attorney in another, pending, criminal matter.

. See People v Lynes (49 NY2d 286, supra); People v Bolden (75 AD2d 622); compare People v Cypriano (73 AD2d 902).