Saul S. Street, J.
This is an action by a manufacturer against a local motor carrier and its insurer for loss in transit of five intracity shipments of men’s clothing valued at $7,524.30. The defendant carrier has affirmatively pleaded that its liability was limited by contract to $50, or 50 cents per pound actual weight of the shipment over 100 pounds. The insurer disputes the plaintiff’s right to sue on the policy issued to the carrier.
It appears that the carrier commenced doing business with the plaintiff some time in 1949, as a result of a telephone call from a Mr. Pearl, the plaintiff’s general manager. In that conversation Frank E. Wolf, the carrier’s president, told Mr. Pearl that ‘ ‘ prices were 75 cents per carton with a $50 valuation. Any excess valuation would be charged at the rate of 10 cents per 100 * * *. He told me they were not interested in any excess valuation because they carry their own insurance the same as they ship railway express on $50 valuations.” Mr. Pearl (in his examination before trial) had no recollection of such conversation with Mr. Wolf. Wolf never actually met Pearl, but later testified to a series of other business conversations which led him to conclude that it was Pearl’s voice.
It appears, too, that the defendant carrier had served the shipper for upwards of three years and that it was standard procedure for the shipper to prepare the shipping receipt from a supply left by the carrier for that purpose. These receipts contained a contractual clause similar to the one used in connection with the shipments in issue, which reads: “ Note: We will not pay over $50 in case of loss, or 50^ per pound actual charge for any shipment in excess of 100 pounds unless a greater value is declared, and charges for such value paid.”
The testimony further discloses that at about 3:00 p.m. on January 19, 1953, at its place of business, 1107 Broadway, New York City, the plaintiff turned over to the carrier’s driver 13 cartons for delivery to certain forwarders named Acme Fast Freight and State Parcel, both located in midtown Manhattan. He (the driver) drove the truck containing these cartons first to his own depot at 29th Street and Fourth Avenue, then made a delivery on West 17th Street, following which he attempted to deliver some of the plaintiff’s cartons to the State Parcel on *1087 West 22nd Street and Eleventh Avenue hut found ‘ ‘ the place too crowded and left.” Then he proceeded to Acme Freight on West 28th Street and Twelfth Avenue (where he had 11 cartons to deliver), “where the line was too long which would keep me past my time so I called my office, explained the situation, the conditions, and they told me to pull in.” Mr. Wolf “ reported 13 cartons of Dave Levine’s * * * stolen when the truck was hijacked from the garage ” to the insurer.
The insurance policy in question insures the defendant Wolf’s Package Depot Co., Inc., and ‘ ‘ covers the legal liability of the assured as a carrier as imposed by law and as may be assumed by contract * * * for direct loss or damage from perils hereinafter specified with respect to lawful goods and merchandise while loaded for shipment on and/or in transit in vehicle or vehicles operated by the assured.”
There is also attached to this policy a rider which reads:
‘ ‘ The policy to which this indorsement is attached is a cargo insurance policy and is hereby amended to assure compliance by the insured as a common carrier of property by motor vehicle with section 215 of the Interstate Commerce Act, with reference to making compensation to shippers or consignees for all property belonging to shippers or consignees * * *.
“ The Company hereby agrees to pay any shipper or consignee for all loss of or damage to all property belonging to such shipper and consignee and coming into the possession of the insured in connection with its transportation service for which loss or damage the insured may be held legally liable. ’ ’ As I said, the carrier contends that its liability is limited to $50 per shipment. The insurer denies any liability to or privity of contract with the shipper. The plaintiff has raised several issues of fact and law. It contends (1) that the telephone conversation between Wolf and Pearl did not take place and, if it did, that it was not admissible; (2) that there was no limitation of liability of the carrier because the shipper had no choice of rates; (3) that even if the court should find that there was a choice of rates offered to this plaintiff, the carrier is nevertheless liable for negligence because ‘‘ there was no agreed valuation agreement”; (4) that there was an unnecessary and unreasonable deviation or departure from the regular route or course; (5) that notwithstanding any valid agreement hmiting the carrier’s liability, it was nonetheless liable in its capacity as a bailee for hire; and (6) that under the terms of the insurance policy issued to the carrier, the plaintiff has a direct cause of action against the insurer.
*1088 (1) I am satisfied from the evidence adduced that the witness Wolf did have the telephonic conversation testified to, with Pearl, and am of the opinion that the conversation is admissible. Circumstantial evidence is permissible to authenticate the voice heard over the telephone when the message reveals that the speaker had knowledge of facts that only he would be likely to know, or if other confirmatory circumstances make it probable that he was the speaker. (Wigmore, Evidence [3d ed.], § 2155; McCormick, Evidence, § 193; Mankes v. Fishman, 163 App. Div. 789; Henderson & Co. v. Baron, 164 N. Y. S. 697; Friedman, v. Schlossberg, 186 N. Y. S. 78.)
(2) As to the validity and public policy today, of limiting the carrier’s liability, the established rule is that a common carrier cannot make a valid contract exempting itself from damages for negligence unless the shipper is given a choice of rates depending on his valuation of the goods. (Union Pacific R. R. Co. v. Burke, 255 U. S. 317; Hart v. Pennsylvania R. R. Co., 112 U. S. 331.) Where such a choice is offered, the shipper under the doctrine of estoppel is restricted to recovering the valuation which he has declared, or, “ if none has been declared, then to the maximum specified in the contract as controlling in the absence of a higher declaration.” (National Blouse Corp. v. Felson, 274 App. Div. 164, 167, affd. 299 N. Y. 612; emphasis supplied.) In my opinion, this shipping receipt was a contract between this plaintiff and the carrier which fixed the carrier’s maximum liability for any loss including the carrier’s negligence.
Even assuming that, standing alone, the receipt was deficient, there was sufficient evidence adduced at the trial to support the finding that the defendant carrier had in fact afforded plaintiff the opportunity of declaring a greater valuation at a proportionately higher rate of carriage. Moreover, the use and possession by this plaintiff of the books of shipping receipts for over three years gave it ample opportunity to obtain knowledge of the contents of these receipts and to choose alternate rates if it so desired. (Greenwald v. Barrett, 199 N. Y. 170.)
(3) Plaintiff, however, seeks to draw a distinction between an agreed valuation agreement and a simple limitation agreement, contending that in the case at bar there was no agreement as to valuation — hence estoppel plays no part in this agreement, citing D’Utassy v. Barrett (219 N. Y. 420); Heuman v. Powers Co. (226 N. Y. 205); Howard v. Handler Bros. & Winell (279 App. Div. 72, affd. 303 N. Y. 990). Irrespective of how the courts may once have viewed the question, the public policy and the law are settled today, that, where a choice of rates is *1089 offered and no valuation has been declared but a maximum has been specified in the contract, the shipper under the doctrine of estoppel is restricted to the recovery of such maximum. (National Blouse Corp. v. Felson, supra.)
(4, 5) There is no need in discussing the plaintiff’s contention as to the liability of the carrier as a bailee because in this instance it is identical; nor is there any merit to the point concerning “ deviation ”. The term was originally applied in admiralty and shipping law and meant the wandering or straying of the vessel from the customary course of the voyage (80 C. J. S., Shipping, § 144). It does not apply to intracity local motor carriers, in shipments from 24th to 29th Streets.
(6) Now, as to the action against the insurer: The policy herein referred to it a motor cargo liability policy, and a cause of action arises against the insurer in favor of the carrier when liability “ assumed by contract ” attaches. (7 Appleman, Insurance Law, § 4261.) It does not follow that every cargo carrier’s liability policy inures to the benefit of the shipper; nor do I find anything in the language of the policy proper which gives this plaintiff a cause of action against the insurer. (Eberhard v. Ætna Ins. Co., 134 Misc. 386.) However, in my opinion, the rider or indorsement on this policy, wherein the insurer agreed “ to pay any shipper or consignee for all loss or damage to all property belonging to such shipper or consignee ”, constitutes a beneficiary contract for the benefit of the shipper and authorizes such action against the Centenniel Insurance Company (Exton & Co. v. Home Fire Marine Ins. Co., 249 N. Y. 258). This point has been considered by other courts on similar policies, and it has been held that such an indorsement, when attached, makes the shipper a third-party beneficiary of the contract, with the right to bring action directly against the insurance company. (Chapin Owen Co. v. Newman, 201 Misc. 1072; Atken Co. v. National Liberty Ins. Co. of America, 168 Misc. 334; Zucker’s Sons v. Automobile Ins. Co. of Hartford, 23 N. Y. S. 2d 83.) Though the purpose of this indorsement is to “ assure compliance by the insured with section 215 of the Interstate Commerce Act [U. S. Code, tit. 49, § 315] ”, the agreement by the company “ to pay to any shipper ” is unequivocal, unconditional and not restricted to interstate shipments.
Accordingly, the motion to dismiss as against the Centenniel Insurance Company is denied.
Judgment is directed for the planitiff against both defendants in the sum of $250. This constitutes the decision of the court under section 440 of the Civil Practice Act.
*1090 Supplemental Opinion
This case was tried before me on the 20th and 21st days of January, 1955. I decided it on February 15, 1955, wherein I held that plaintiff’s recovery was restricted to the maximum of $50 per shipment or 50 cents per pound, as specified in the contract or receipt in evidence. No testimony was adduced at the trial with respect to the weight of the five shipments. There was an oral understanding, however, between the parties, with the approval of the court, that in the event the weight exceeded 100 pounds per shipment, then such a stipulation would be submitted to the court. Since my decision both counsel have appeared and agreed that the weight of each shipment exceeded 100 pounds and that the total liability, within the meaning of my construction of the shipping receipt, should be $487, with interest from January 19, 1953.
In addition, counsel for the plaintiff, who prior to my decision submitted some extracts of the testimony to me, has since called my attention to the fact that I quoted Mr. Wolf, one of the defendants’ witnesses, to the effect: “Mr. Wolf reported 13 cartons of Dave Levine’s * * * stolen when the truck was hijacked from the garage.” It now appears from the minutes submitted to me that that statement was stricken from the record as hearsay. Both counsel, however, stipulate that if an employee of the garage at which the truck in question was stored were called, he would testify that the following morning the truck containing the five shipments of plaintiff’s merchandise was missing, and both counsel have stipulated that the record contained a statement to the effect that the five shipments of merchandise in question were missing the next morning.
Accordingly, my decision of February 15, 1955, is modified to include this stipulation as to the missing shipments, and directing judgment for the plaintiff in the sum of $487, with interest from January 19, 1953.