OPINION OF THE COURT
Fuchsberg, J.
Defendant Julius Lynes was convicted, after a jury trial, of rape in the first degree, sodomy in the first degree, robbery in the first degree and burglary in the first degree. His conviction was affirmed by the Appellate Division. The issues on which the present appeal turns are the admissibility at trial of (1) a telephone conversation between a police detective and a caller who identified himself as the defendant and (2) oral statements made to another police officer by the defendant purportedly without first having been advised of his constitutional rights. For the reasons which follow, we hold both were properly received in evidence.
Police attention in this case was directed at defendant after the complainant, happening to observe him with a group of young men on a congested street in the Harlem section of Manhattan, recognized him as her assailant. When the defendant ran into a nearby tenement house, other people who had been standing with him told the complainant that the man was nicknamed Speedy. Acting on her relay of this information to the police, a detective, Donald Longo, repaired to the building into which the man had disappeared, where, in the course of his inquiries of tenants, he came upon a man who identified himself as Speedy’s brother and provided the information that defendant’s formal name was Julius Lynes. However, the man denied knowing where Speedy was at the time and, when he asked why the detective was seeking his brother, was advised that it was in connection with the investigation of an old warrant. Before departing, Longo re *291 quested that Speedy telephone him and, for that purpose, left with the brother a slip of paper bearing the detective’s name and telephone number at the Manhattan Sex Crimes Squad. This sets the stage for the call which gives rise to the first of the two evidentiary points with which we treat here.
For, only hours later, Longo picked up a telephone receiver at the other end of which was an unfamiliar male voice that asked for him by name. According to the record, the detective, having then inquired who was calling, received the response, "Speedy — Julius Lynes” and then, "What are you looking for me for?” In reply, the detective said, "Your knife was found in an apartment”, to which the voice was then heard to say "Oh no, oh no”. When the detective thereupon asked if the man who had identified himself as Julius Lynes would come in and talk to the police, the caller refused, saying "you are going to have to find me” and then hung up. It is this conversation which was introduced at trial over the defense’s vigorous objection that Longo admittedly was unfamiliar with the voice and therefore could not personally identify it as that of the defendant. The trial court’s ruling was based generally on the rationale that other circumstances provided sufficient corroboration of the identity of the caller.
Prefatory to focusing on the question so raised, we note that the problem was fundamentally one of authentication, i.e., not merely whether the sound of the voice was recognizable as that of the defendant, but, more broadly, whether a sufficient foundation had been laid to permit a finding that the conversation was one with the party against whom it was offered. Putting the issue another way, in this case was the proof such that a jury could find that defendant was indeed the caller? (See People v Dunbar Contr. Co., 215 NY 416, 422 [Cardozo, J.]; Carbo v United States, 314 F2d 718, 743.)
The question of authentication, of course, presents no great legal difficulty when the witness testifies that he recognizes the voice of the caller, and that is irrespective of whether the familiarity was acquired before or after the conversation (People v Dunbar Contr. Co., supra, p 422; People v Strollo, 191 NY 42, 61). At the opposite end, it goes without saying that, without more, a mere self-serving statement of identity by a caller whose voice is unknown to the listener is not enough to permit it to go in (Murphy v Jack, 142 NY 215; 7 Wigmore, Evidence [Chadbourn rev ed], § 2155, p 760). But that defect need not be fatal where alternative indices of *292 reliability are to be found in surrounding facts and circumstances (see People v McKane, 143 NY 455; Van Riper v United States, 13 F2d 961, 968, cert den sub nom. Ackerson v United States, 273 US 702; Ann., 79 ALR3d 79, 154 et seq.).
Thus, in part on the theory that the customary mode of operation of telephone users provides some assurance of reliability, in some instances the placing of a call to a number listed in a directory or other similarly responsible index of subscribers, coupled with an unforced acknowledgment by the one answering that he or she is the one so listed, has been held to constitute an adequate showing (see, e.g., Mankes v Fishman, 163 App Div 789; Van Riper v United States, supra). In other cases, the substance of the conversation itself has furnished confirmation of the caller’s identity, as, for example, when subsequent events indicated that the party whose identity is sought to be established had to have been a conversant in the telephone talk (see Ottida, Inc. v Harriman Nat. Bank & Trust Co. of City of N. Y., 260 App Div 1008; United States v Frankel, 65 F2d 285, 286-287) or when the caller makes reference to facts of which he alone is likely to have knowledge (see Levine & Co. v Wolfs Package Depot, 29 Misc 2d 1085, 1088; Dege v United States, 308 F2d 534; State v Bassano, 67 NJ Super 526). From all this emerges the rule that, while in each case the issue is one to be decided upon its own peculiar facts, in the first instance the Judge who presides over the trial must determine that the proffered proof permits the drawing of inferences which make it improbable that the caller’s voice belongs to anyone other than the purported caller (see United States v Lo Bue, 180 F Supp 955, 956-957; see, generally, Comment, 11 NC L Rev 344).
So measured, it was not error for the court to overrule the objection. The call was made to the detective after he had made a specific request that the defendant call and had left his name and telephone number for that very purpose with a man purporting to be defendant’s brother. The promptness of the call — within a few hours of this invitation — can be said to impart a quality of reflexiveness that tends to undermine the chance that the invitation and the response are connected by only a post hoc ergo propter hoc rationalization (see People v Conway, 3 111 App 3d 69; People v Kroeger, 61 Cal 2d 236). Moreover, aside from the immediacy of the response, the court could weigh such factors as the caller’s seeming ability to track the message left for the defendant, specifically in asking *293 to speak to Detective Longo and in using his own formal name as provided by the brother as well as the more informal appellation "Speedy”. And, since the record reveals no attempt by Detective Longo to communicate with Lynes other than on the occasion when he left the request to call, the court also was entitled to view defendant’s subsequent admission, made to another police officer, that he knew the detective was looking for him as additional confirmation that the message was delivered intact to its intended recipient. Beyond this, the substance of the conversation supplies further criteria of reliability. Not only did the caller indicate that he knew the detective had been searching for him, but, perhaps above all, what could be found to be his dismayed and spontaneous reaction to the information that the complainant’s attacker had left a knife behind — a fact which Longo had not communicated to the brother — could be taken as telltale evidence that the caller indeed was Speedy.
Moreover, the question here was whether the conversation was admissible and not whether, standing alone, it would suffice to support a finding of guilt beyond a reasonable doubt. In that connection, it is well to remember that the complainant directly described the details of the criminal event and identified the defendant as its perpetrator on the basis of her personal observations at the time of its commission.
In sum, taking these facts and inferences in various combinations or in concert, it cannot be said as a matter of law that the Trial Judge erred in leaving it to the jury — aided as it could be by the instruments of cross-examination, counsels’ arguments and other fact-finding tools available at the trial level — to decide whether, as Learned Hand put it, "The chance that these circumstances should unite in the case of some one [other than the defendant] seems * * * so improbable that the speaker was sufficiently identified” (Van Riper v United States, 13 F2d 961, 968, supra).
We turn now to defendant’s second contention, that inculpatory remarks he made to a second police officer, Thomas Czfwzyk, while Lynes was being held on an unrelated charge, should have been suppressed because he had not been advised of his Miranda rights.* The occasion for this alleged *294 infringement on defendant’s constitutional rights followed his arraignment on this other charge, during which he was also notified by the court that a warrant had been issued against him by the Sex Crimes Unit.
It was right after this court appearance, and while Czfwzyk, who until then had no knowledge of or connection with the case Detective Longo was investigating, was escorting Lynes into his cell, that defendant asked generally whether he could speak to him and, when the officer said yes, the defendant continued, "What is this warrant about?” The police officer, possessed of no more information than that which could be gathered from the remark which he had just heard the arraigning Judge make to the defendant, responded, "You should know, they are looking for you”. It was at this juncture, and without any invitation, much less urging or coaxing, that defendant poured out an incriminatory comment in the course of which he boasted that he had "taken care of’ a woman in an episode for which he knew the detective who was looking for him.
At an ensuing suppression hearing, the Trial Judge found beyond a reasonable doubt that the statement was one máde voluntarily and spontaneously, and not as the product of any police interrogation. In the affirmed posture of the case now, this determination of spontaneity is beyond our power to review unless no possible reading of the facts supports it (People v Anderson, 42 NY2d 35, 38-39; People v Leonti, 18 NY2d 384, 390).
From that perspective, although we have noted that incriminatory statements are not rendered spontaneous simply because they are precipitated by subtle forms of interrogation rather than blatantly coercive techniques (see People v Garofolo, 46 NY2d 592, 603-604; People v Maerling, 46 NY2d 289, 301-303; People v Howard, 47 NY2d 988, 989), the nature of the brief exchange between the defendant and the police officer in this case does not compel a finding as a matter of law that the statement was not spontaneous. The defendant himself initiated the conversation and the officer’s response need not have been viewed as one designed to elicit some further reply by the defendant. Rather, allowing for the normal variations in the use of language by different individu *295 als, he could at least just as well have intended to discourage further colloquy by indicating that he was not in a position to add anything to what the defendant himself already knew.
 The test in such situations cannot be whether, through hindsight, the defendant professes to believe the police intended to provoke an incriminating response. Were that so, virtually any police remark, no matter how innocuous, would constitute an interrogation as long as it was followed by an inculpatory statement. Instead, fully sensitive to the defendant’s rights, yet using an objective standard, the Trial Judge must determine whether the defendant’s statement can be said to have been triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant (see People v Howard, 62 AD2d 179, 181-182, affd 47 NY2d 988). On these facts, it cannot be said that the failure to suppress the statement was error since neither defendant’s right to remain silent nor his right to counsel were abridged.
We therefore conclude that the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order affirmed.

 [2] We note from his testimony at the suppression hearing that the officer was apparently aware that Lynes had retained counsel on the unrelated charge, and so the defendant should properly be considered to have invoked the right to counsel, thus foreclosing any police questioning on the rape incident as well (see People v *294 Rogers, 48 NY2d 167). However, since we conclude that this was not an instance of police interrogation, there was in no event any abridgment of the right to counsel.