Wachtler, J.
(dissenting). I cannot agree with the majority that the defendant’s admission of guilt should be suppressed.
A defendant in custody who immediately admits his guilt when informed of the charge against him cannot be said to have been interrogated. When the police have also provided details of the underlying criminal act, an affirmed finding that the defendant’s admission was spontaneous should be upheld, particularly when the defendant himself requested the additional information. To hold as a matter of law, as the majority now does, that such a statement is not spontaneous, because not literally “self-generating”, unrealistically narrows to the point of extinction, the exception for spontaneous confessions which in the past has been one of the few consistently approved concepts in this otherwise volatile area of the law. It also ignores well-settled principles holding this type of question to be essentially a factual one beyond our review. Indeed it effectively overrules last year’s decision in People v Lynes (49 NY2d 286, 295), in which we expressly rejected the notion that “any police remark, no matter how innocuous, would constitute an interrogation, as long as it was followed by an inculpatory statement.”
*715 The incident at issue occurred on February 9,1978 when the defendant was arrested for robbery by Inspector Connelly of the State Bureau of Criminal Investigation. At the police barracks the defendant, unassisted by counsel, allegedly admitted his guilt to the charge. Prior to trial he moved to suppress this admission on the ground, among others, that it was obtained in violation of his right to the assistance of counsel guaranteed by the State Constitution.
At a hearing on the motion Inspector Connelly testified that on February 9,1978 he applied to the Town Justice for a warrant authorizing defendant’s arrest on a first degree robbery charge. After obtaining the warrant Connelly went to the defendant’s house where he arrested the defendant at approximately 7:30 that evening. The officer testified that he then advised the defendant of his rights in accordance with Miranda v Arizona (384 US 436) after which the defendant stated “He wanted to know *** what robbery he was charged with and I told him I would explain that to him when he got to the barracks.” In the police car the defendant asked the officer “numerous times” what he was “being charged with” and accused the police of making a mistake. However, the officer told him to “sit back. When I get to the barracks I will tell you what robbery.”
When they arrived at the barracks the officer removed the defendant’s handcuffs, again advised him of his rights and said “now, I am going to tell you what you are charged with.”
“You are charged with the robbery of the Gasland gas station on Route 7 in the Town of Colonie. You did the job with a kid by the name of Lawless. You used Lawless’s car. You parked the car behind the bank, which is about a block behind the Gasland gas station, walked through the fields, stood behind the wooden fence. When the girl came out with the two moneybags, both of you stepped out from behind the fence. You told her to throw the money over and she threw you the money.
“Then you asked — one of you asked her for the car keys, told her not to do anything stupid, got in behind the fence again, ran back to the car and drove to your house and split the money up.
*716 “I said, that is the robbery that you are charged with.” At that point the defendant responded, “I did it.” He also agreed to make a written statement. That, however, was not done because another officer informed Connelly that an attorney representing the defendant had just called the barracks and directed that no statement be taken. Connelly confirmed this in a brief discussion with the attorney.
At the hearing the defendant also sought to show that he had retained the attorney prior to his arrest and that the police knew or should have been aware of this. The trial court found it unnecessary to reach that question because it found the defendant’s admission of guilt was spontaneous. Accordingly, the motion to suppress was denied.
The defendant subsequently pleaded guilty to robbery in the third degree. The Appellate Division affirmed holding that “the record amply supports the conclusion of the trial court that the admission was made ‘spontaneously’”.
Initially I note that there is no doubt that the defendant’s right to counsel had indelibly attached at the time he admitted his guilt. Although the trial court left unresolved the question as to whether an attorney had appeared on the defendant’s behalf before he made the statement, it is undisputed and has been found as a fact that an arrest warrant had been issued and, indeed, the defendant was arrested on the warrant. After the hearing had been concluded in this case, our court decided the case of People v Samuels (49 NY2d 218). In the Samuels case we held that the issuance of such a warrant marks the commencement of the criminal action against the defendant, and at that point his right to counsel indelibly attaches under the State Constitution. It is also settled that this holding applies retroactively to cases still in the appellate process (People v Pepper, 53 NY2d 213; see, also, People v Lucas, 53 NY2d 678; People v Cullen, 50 NY2d 168).
Once the defendant’s right to counsel indelibly attached, he could not be questioned or effectively waive his rights without the attorney being present (People v Samuels, 49 NY2d 218, supra). The rule not only prohibits the police from expressly questioning the defendant but also, more broadly, from engaging in conduct which is likely to evoke *717 a response from him (see, e.g., People v Garafolo, 46 NY2d 592, 603; People v Howard, 47 NY2d 988; People v Grimaldi, 52 NY2d 611; cf. People v Lynes, 49 NY2d 286, 295, supra; Rhode Is. v Innis, 446 US 291, 300-301). It does not, however, prohibit him from spontaneously admitting his guilt (People v Lynes, supra; People v Kaye, 25 NY2d 139, 145). On this point the prosecutor has the burden of proof (People v Stoesser, 53 NY2d 648)[1] and the exception for spontaneous statements is concededly a narrow one (People v Grimaldi, supra).
Even when the defendant has initiated an exchange with the police, statements made during the course of police questioning or an informal “long discussion” cannot be said to be spontaneous (see, e.g., People v Townes, 41 NY2d 97; People v Roberson, 41 NY2d 106; People v Tompkins, 45 NY2d 748; People v Maerling, 46 NY2d 289, 301-302; People v Cunningham, 49 NY2d 203, 210, n 2; People v Bell 50 NY2d 869; People v Lucas, 53 NY2d 678). On the other hand, the police are not obligated to “take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminating statement” (People v Kaye, supra, p 145). Nor have we ever gone so far as to hold that the police could not inform the defendant of the charge against him or respond to the defendant’s request for details identifying the incident which forms the basis for the charge.
Realistically there is always the risk that a defendant suddenly arrested and informed of a pending charge may be impelled to make some statement potentially damaging to his case. Nevertheless the defendant is entitled to know why he has been arrested (CPL 120.80, subd 2). Indeed to require or even permit the police to deny the defendant such basic information could itself exert a form of psychological pressure, thus perversely contributing to rather *718 than diminishing the coercive atmosphere inherent in the custodial setting. A defendant confronting the isolation of confinement should not also have to face a wall of silence. Notably the Supreme Court which has also broadly defined interrogation for the purposes of the Miranda rule, has nevertheless excluded from the definition words or conduct normally incident to arrest or custody.[2]
The defendant apparently does not dispute these principles. His complaint is that Investigator Connelly did not “simply tell” him what he was charged with; he “exhaustively detailed the investigation information”. This he claims was meant to impress the defendant with the strength of the case against him so as to overwhelm, intimidate or provoke him into making some response.
Although the defendant has persuaded the court to hold as a matter of law that the officer provided too much information he does not suggest what would generally be the proper amount of identifying details or what if any additional details may be appropriately furnished by the police when, as here, the defendant requests more specific information concerning the charge. In my view any question as to the amount of information the police should provide in advising the defendant of the charge against him cannot be reduced to a formula. And, although it is possible that this usually ministerial duty may, in some cases, be used as a means for encouraging the defendant to make damaging admissions, a determination that this has occurred must necessarily depend on the facts of the particular case.
In this case it is important to emphasize that the defendant himself requested additional information specifying the robbery charged. In the officer’s initial encounter with the defendant it appears that he did indeed “simply tell” the defendant that he was being arrested on a warrant relating to a robbery charge. It was only in response to the defendant’s persistent requests for additional information specifically identifying the robbery, coupled with com *719 plaints of an erroneous arrest, that the officer revealed the nature of the crime in greater detail. Thus, this is not a case where a police officer had gratuitously disclosed the strength of his case to a defendant who had previously chosen to assert his right to remain silent or consult with counsel (cf. People v Grant, 45 NY2d 366, 376). Nor did the officer furnish provocative information concerning potential witnesses by, for instance, telling the defendant that an accomplice had turned against him. Actually the officer provided only a relatively simple narrative of the crime in conclusory terms not much different from the written statements typically included in felony complaints, and other lower criminal court accusatory instruments, which by statute may be attached to the warrant (CPL 120.40) and furnished to the defendant in custody (CPL 120.80, subd 2). Neither did the officer engage the defendant in questioning or discussion. As noted, he merely responded to the defendant’s inquiry by providing a brief narrative of the crime charged, after which the defendant immediately admitted his guilt.
On essential points this case is indistinguishable from our decision in People v Lynes (49 NY2d 286, supra). In that case the defendant also requested information about a warrant and made an incriminating comment when the police officer responded to "the inquiry. Although the majority now finds that case distinguishable because the officer there had no knowledge or connection with the charge, had not conveyed a contrary impression to the defendant, and had not advised the defendant of his rights, those were not the factors which were considered controlling when the case was decided.[3] On the contrary the opinion simply emphasized that the “defendant himself initiated the conversation”, that there was no extended discussion but only a “brief exchange”, and that by responding to the defendant’s inquiry as he did, the officer may “well have intended to discourage further colloquy” *720 (People v Lynes, supra, pp 294, 295). Focusing on those factors, also present in this case, we held in Lynes that the courts below could properly find that the defendant’s statement was spontaneous.
In sum, there was sufficient basis for the lower courts to conclude that when the defendant immediately admitted his guilt after the crime had been identified with greater specificity, as he requested, he did so spontaneously and not as the result of any obvious or subtle “inducement, provocation, encouragement or acquiescence” by the police (People v Maerling, 46 NY2d 289, 302-303, supra). Of course different fact finders might have emphasized other facts and drawn contrary inferences. But that merely emphasizes the factual nature of the determination which, finding support in the evidence, should not be set aside by this court (People v Lynes, supra, p 294).
Thus I would affirm the order of the Appellate Division.
Chief Judge Cooke and Judges Jones, Fuchsberg and Meyer concur in memorandum; Judge Wachtler dissents and votes to affirm in an opinion in which Judges Jasen and Gabrielli concur.
Order reversed, etc.

. In the brief memorandum in the Stoesser case we observed that there was no proof that defendant’s statement was spontaneous in the literal sense of being “self-generated”. But the actual holding was that the People had failed to meet their burden of providing specific facts, as opposed to conclusions, showing that the circumstances surrounding the confession would support a finding that it was spontaneous. And, as noted earlier, when we were specifically confronted with the question in People v Lynes, (49 NY2d 286, supra) we held that a statement prompted by a police officer’s remark could nevertheless be held to be spontaneous, although obviously it could not be said to be “self-generated”.

. In Rhode Is. v Innis (446 US 291, supra) the court stated at page 301, “the term ‘interrogation’ under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response” (emphasis added).

. Although noted in the recitation of the facts in that case, no particular legal significance was attached to the police officer’s apparent lack of prior connection with the investigation and ignorance of the case. Certainly the officer’s failure to advise the defendant of his rights, which was the basis for the defendant’s motion to suppress, was not also considered a factor in the officer’s favor providing a basis for denying the motion to suppress.