■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN WILLIAM HOPKINS, Appellant. — Appeal from a judgment of the County Court of Fulton County (Albanese, J.), rendered November 24, 1980, upon a verdict convicting defendant of the crimes of murder in the second degree, felony murder and

kidnapping in the first degree. On August 15, 1979, at 6:00 P.M., the State Police came to defendant's home during the course of their investigation of the kidnapping and stabbing of one Celene Edwards. Defendant matched the description given by Edwards and owned the automobile involved. He accompanied the police to the Fonda barracks where he denied knowledge of the Edwards crimes, and later signed consents to have his car and house searched and to be photographed. He also agreed to take a polygraph examination. Celene Edwards identified defendant as her assailant in a photo array, and, at 2:15 A.M., he was arrested at the Loudonville State Police Barracks for the attempted murder, kidnapping and sodomy of Ms. Edwards. Defendant was returned to Fonda around 5:45 A.M. At approximately 8:00 A.M., he confessed for the first time to the murder of Cecelia Genatiempo in 1976. Thereafter, he also confessed to the murder of Sherrie Ann Carville in 1978. During the questioning, defendant helped to prepare a written statement in which he detailed his participation in the Genatiempo murder. Defendant also drew a diagram of the abduction scene and of the knife he used. He was arraigned at 3:30 P.M. That night, at about 10:00 P.M., he again confessed that he had committed these crimes to a prison guard at Montgomery County Jail. A jury convicted defendant of two counts of murder in the second degree, kidnapping in the first degree, and rape in the first degree, in the Genatiempo case. On this appeal, defendant contends that some 20 errors made by the police and the trial court mandate the reversal of his conviction. Initially, defendant contends that his statements and the evidence obtained in the search of his home and vehicle should have been suppressed as the products of an illegal detention (see *Dunaway v New York,* 442 US 200; *People v Misuis,* 47 NY2d 979). He contends that police deception induced him to leave his home and go to the Fonda barracks; that *Miranda* warnings were never given to him; and that he was never advised of the nature of the investigation. In determining whether defendant was in custody, the correct test is what a reasonable person, innocent of any crime, would have thought under the circumstances (*People v Yukl,* 25 NY2d 585, 589; *People v Byers,* 71 AD2d 77, 80). Where, as here, different inferences can be drawn from the facts, the determination is for the trier of facts, and should be upheld unless unsupported as a matter of law (see *People v McNeeley,* 77 AD2d 205, 208-209, and cases cited therein). In our view, the evidence is sufficient to support the trial court's finding that defendant voluntarily went to, and remained at the police station. Neither his statements nor the consent search were invalidated by an illegal detention. Nor do we find persuasive defendant's further contention that his statements were involuntary. The People have the burden of showing that defendant made a voluntary, knowing and intelligent waiver of his Fifth Amendment privilege against self incrimination (*People v Whitehurst,* 25 NY2d 389). Such waiver must be proven by the People beyond a reasonable doubt (*People v Anderson,* 42 NY2d 35, 38-39; *People v Valerius,* 31 NY2d 51, 55). Credibility is an issue of fact, and, in the absence of extraordinary circumstances, the trial court's determination thereof should not be disturbed (see *People v Wright,* 71 AD2d 585, 586). The court painstakingly scrutinized and weighed all of the evidence and found "the parts fit into the whole mosaic of events". Defendant is not an illiterate or unknowing person; rather, he had majored in criminology at college and passed an entrance examination for the State Police. He was found to be alert, intelligent, aggressive, and of strong mind and will, unlikely to succumb to suggestions or persuasion. On this record, we cannot say that the court erred in finding that the People had sustained their heavy burden of proof. The delay in arraignment on the Edwards charges did not render defendant's statement involuntary. Delay in arraignment is but one factor to be considered on the

issue of voluntariness and does not, of itself, mandate suppression of the confession (*People v Holland,* 48 NY2d 861; *People v Dairsaw,* 46 NY2d 739). In our view, the delay herein did not render defendant's statements involuntary (see *People v Tarsia,* 50 NY2d 1, 12). Moreover, we do not find that the signing of the consent to search, the arrest, and the circumstances of the arraignment on the Edwards charge, constituted sufficient judicial activity to trigger defendant's indelible right to counsel, thereby invalidating any and all statements made in the absence of counsel (cf. *People v Pawlyshyn,* 77 AD2d 687).[*] Since counsel had not yet been retained on the Edwards charge, questioning on the unrelated Genatiempo crimes was permissible (*People v Bartolomeo,* 53 NY2d 225; *People v Kazmarick,* 52 NY2d 322; *People v Rogers,* 48 NY2d 167). The impending arraignment, at which an attorney was standing by for purposes of assignment, was scheduled for after 9:00 A.M., when the Johnstown City Court convened. Defendant had initially confessed at least an hour earlier. While the intervening revelations concerning the Carville and Genatiempo investigations may have sidetracked the Edwards arraignment, we cannot say that the delay was improper or in any way designed to avoid defendant's right to counsel (cf. *People v Lockwood,* 44 NY2d 769, revg on dissenting opn below 55 AD2d 17, 20-25). We next consider defendant's contention that his second confession to a correction officer at the jail should have been suppressed because it was made in the absence of counsel. Officer Levandowsky was assigned to maintain a suicide watch over defendant. After observing defendant pacing in his cell for 10 minutes, Levandowsky inquired, "How is everything going?" Whereupon, according to the officer, defendant "told me he was glad he was caught. He said if he wasn't caught he probably would have committed more crimes, and he mentioned about three killings he was involved in, and I said, 'The Carville girl and Genatiempo', and he said he just wanted to get medical help." Defendant then continued his rambling statement, lasting approximately one hour, during which he "kept repeating himself and just repeating all he had done." At the suppression hearing, the Trial Judge found beyond a reasonable doubt that the statement was voluntarily and spontaneously made, and was not the product of any police interrogation. In our view, the record amply supports this finding. Our inquiry is whether defendant's statement was "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant" (*People v Lynes,* 49 NY2d 286, 295). The burden of proof on this issue is on the People (*People v Stoesser,* 53 NY2d 648), and the exception for spontaneous statements is narrowly construed (see *People v Grimaldi,* 52 NY2d 611). Nonetheless, certain exchanges between a defendant and his jailers are inevitable (*People v Garofolo,* 46 NY2d 592, 603). The Court of Appeals has expressly rejected the notion that "any police remark no matter how innocuous, would constitute an interrogation, as long as it was followed by an inculpatory statement" (*People v Lynes, supra,* p 295). Under the circumstances, we cannot say, as a matter of law, that Levandowsky's initial inquiry was a subtle form of interrogation, rather, it focused on defendant's well-being. We find that defendant's responses, voluntarily blurted out, were, in essence, an acknowledgment of his participation in three separate killings. Defendant further contends that he was denied a fair trial by prosecutorial misconduct during opening and closing statements to the jury. Specifically, defendant cites as improper references to the assault of Edwards, the murder of Carville, and an incident when defendant allegedly attempted to strangle his wife. It is

---

[*] A court order permitting police to bring the defendant to the crime scene (*People v Sugden,* 35 NY2d 453, 461), or directing that the defendant appear in a lineup (*People v Banks,* 53 NY2d 819; *People v Coleman,* 43 NY2d 222), has been held sufficient to trigger the right to counsel.

beyond cavil that a prosecutor may not, by any means, attempt to impress upon a jury that a defendant is guilty of unrelated crimes (*People v Ashwal,* 39 NY2d 105, 110). During the prosecutor's opening, the court specifically directed, "[W]e will not try Celene Edwards' case or the Carville case at this time". Moreover, it was defense counsel who introduced these matters to the jury during *voir dire,* not the prosecutor. We hold that the charge to the jury was adequate to negate and dissipate any improper references by the prosecutor (*People v Ashwal,* 39 NY2d 105, 111, *supra*). Contrary to defendant's contention, a defendant who takes the stand in his own defense fully waives his rights against self incrimination (*People v Tice,* 131 NY 651; *People v Moore,* 42 AD2d 268). Under these circumstances, the prosecutor's comment on defendant's failure to proclaim his innocence or outrage was thus permissible (see *People v Trybus,* 219 NY 18, 24). Finally, while the prosecutor's characterization of defendant as a master of deception and a liar is criticizable, these comments, when viewed in the context of the entire trial, did not deprive defendant of a fair trial (see *People v Galloway,* 54 NY2d 396; *People v Shanis,* 36 NY2d 697). We have examined defendant's remaining arguments and find them to be without merit. Section 703 of the County Law authorizes the appointment of a special prosecutor. *Miranda v Arizona* (384 US 436) does not require that a defendant be advised of the right to arraignment. While the results of a polygraph test are inadmissible (*People v Leone,* 25 NY2d 511), curative instructions here rendered the error of disclosure of such results harmless (*People v Johnson,* 51 AD2d 851). The availability of formal findings of fact and a decision on the suppression hearing before appeal were timely where defendant was apprised of the decision before trial and the record was available (CPL 710.60, subd 6; *People v Russo,* 45 AD2d 1040), thus rendering any error in this regard harmless (see *People v Brady,* 16 NY2d 186; *People v Thomas,* 58 AD2d 899). Judgment affirmed. Sweeney, J. P., Main, Casey, Mikoll and Weiss, JJ., concur.