■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY ALLING, Appellant.—Mahoney, P. J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered December 3, 1984, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

The instant appeal arises out of a shooting incident which occurred during the early morning hours of July 27, 1984 and resulted in the death of Fred Wagner. Wagner, defendant, as well as the other principal parties involved in the incident, were neighbors and were well acquainted with each other. On the morning of July 26, 1984, Wagner had a fight with his girlfriend and roommate, Ann Rozicki, and beat her. Wagner apparently often beat Rozicki and was prone to violence when drunk. Defendant was aware of this fact and of what had transpired between Wagner and Rozicki earlier that day. Additionally, Wagner and defendant had fought over a month earlier when defendant saw Wagner hit Rozicki.

At the time of the incident, defendant, Rozicki and another individual were in defendant's apartment when Wagner knocked on the door and demanded entry. According to defendant, Wagner appeared to be drunk and refused defendant's demand that he leave. Wagner then apparently spoke to Rozicki in the hallway and a fight ensued. Defendant got his shotgun and loaded it, and when Wagner came through the door toward defendant, defendant pointed the gun at him and ordered him to leave. Defendant testified that Wagner responded by grabbing the gun barrel. The gun went off, fatally wounding Wagner.

Rozicki witnessed the incident, but could not remember many details. No one else saw the shooting, although a number of individuals heard sounds consistent with fighting. Defendant promptly called the police and reported the shooting, stating that he shot someone trying to break into his apartment. Police arrived and arrested defendant. Defendant

was indicted and charged with second degree manslaughter and criminally negligent homicide. After a jury trial, defendant was convicted of second degree manslaughter and was sentenced to an indeterminate term of imprisonment of 5 to 15 years. This appeal by defendant ensued.

Initially, we deal with defendant's contentions regarding the propriety of the denial of his motion to suppress. When the police arrived at defendant's apartment, they saw him kneeling over Wagner's body. They asked defendant, "Who shot him?", and defendant replied, "I did." They asked him where the gun was and defendant responded by pointing to a chair in the next room. These brief statements and the gun were admissible. Regardless of whether defendant was technically in custody at that time, the police officer's questions did not constitute interrogation, but were merely a threshold inquiry designed to clarify the nature of the situation (see, People v Huffman, 41 NY2d 29, 33-34; People v La Joy, 109 AD2d 916, 918). Thus, the answers were admissible without Miranda warnings.

Next, the police did have probable cause to arrest defendant at the scene. "Probable cause exists if the facts and circumstances known to the arresting officer warrant a prudent man in believing that the offense has been committed" (People v Oden, 36 NY2d 382, 384). Here, after responding to the call, the police heard a woman screaming, "You didn't have to shoot him. Oh my God why did you shoot him?" They then saw defendant kneeling over the body and he admitted to them that he had shot Wagner. These circumstances would justify a reasonable belief that a homicide had been committed. In this emergency situation, the police were not required to stop at that point and consider defendant's claim of justification prior to making an arrest.

Defendant also gave certain inculpatory statements to the officers in the police car on the way to the station. However, the facts indicate that these were admissible as spontaneous utterances (see generally, People v Lynes, 49 NY2d 286). Statements subsequently given at the police station were clearly in response to a custodial interrogation. However, the record supports County Court's decision that defendant was given his Miranda rights and that he knowingly and voluntarily waived such rights.

Lastly, we agree with defendant that the warrantless search of his apartment was impermissible. The exigent circumstances encountered by the police officers justified them in entering the apartment and in seizing evidence in plain view

or within defendant's reach, but did not justify the full-blown search conducted here (see, *People v Cruz,* 89 AD2d 526, *affd* 59 NY2d 984; *see generally, Mincey v Arizona,* 437 US 385). Nonetheless, the only piece of evidence improperly seized was a shotgun cartridge. Since defendant conceded that he did the shooting, admitting this evidence constituted harmless error.

Next, defendant contends that the verdict was against the weight of the evidence. At trial, defendant sought to establish justification or, failing that, to counter the People's attempt to prove that his conduct was reckless. The testimony of defendant and the other witnesses presented to the jury a question of fact regarding the reasonableness of defendant's conduct. The jury's resolution of this issue against defendant has support in the record. Notably, defendant was well acquainted with the victim and had no reason to believe that he was armed. In our view, upon resolving the issues of credibility, the jury could reasonably conclude that defendant was guilty of manslaughter.

Defendant also argues that evidence of two prior incidents and a prior conviction constituted evidence of uncharged crimes and was improperly admitted. One of the women with defendant on the night of the shooting testified that on a prior occasion, when defendant thought that the woman's former boyfriend might come after him, defendant said something to the effect that he had his gun and would use it to protect himself. Also, evidence was introduced that defendant and Wagner had a fight about one month prior to the shooting, and, fearing retribution, defendant brought guns into his kitchen. Lastly, upon cross-examination of defendant, the prosecutor inquired into the underlying circumstances of a prior reckless endangerment conviction wherein defendant pointed a shotgun at a person's head and threatened him. County Court allowed this evidence on the rationale that it was relevant to negate accident or mistake (see, *People v Ventimiglia,* 52 NY2d 350, 359; *People v Molineux,* 168 NY 264, 292-293, 300-305). Defendant counters that, since he admitted the shooting and offered a defense of justification, there was no issue of accident or mistake.

Initially, the *Molineux* principle is inapplicable to the first two items of evidence at issue (i.e., the testimony that defendant stated he would use a gun to protect himself and that defendant brought guns into his kitchen after a previous fight with Wagner) since these incidents are not crimes. We agree with defendant that evidence of these incidents may well have been irrelevant to the issue in the case, since the only proba-

tive worth of the evidence is that defendant was aware of his right to defend himself and this fact was not an issue at trial. However, the prejudicial effect of such evidence was minimal since it did not suggest to the jury that defendant was willing to go beyond the law of self-defense.

We also hold that County Court properly allowed the prosecutor to explore the underlying circumstances of the reckless endangerment conviction on cross-examination. Contrary to defendant's assertion, absence of accident or mistake was an issue in the case. Defendant testified that Wagner "grabbed the barrel of the gun and the gun went off". Thus, although defendant relied on justification as his defense theory, his own testimony raised the issue of accident or mistake. The underlying circumstances of the reckless endangerment conviction bear some relevance to this issue such that the *Molineux* principle was not violated.

Beyond the *Molineux* principle, the underlying circumstances of the reckless endangerment conviction were admissible to impeach defendant's credibility. Defendant was asked on direct examination, "Did you ever take your shotgun out of the house after anybody?", to which he responded, "Never." This testimony was obviously false. Defendant's direct testimony "opened the door" so that the underlying circumstances of the conviction could be used to impeach his credibility *(see, People v Addison,* 73 AD2d 790, 791). We note that County Court gave a clear instruction to the jury that the evidence could only be considered on the issue of accident or mistake and on the issue of defendant's credibility.

Finally, we reject defendant's contention that the sentence imposed was harsh and excessive.

Judgment affirmed. Mahoney, P. J., Kane and Weiss, JJ., concur.

Casey and Levine, JJ., dissent and vote to reverse in the following memorandum by Levine, J. Levine, J. (dissenting). In our view, reversal and a new trial is required because of the prosecution's introduction on its direct case of evidence that on one prior occasion defendant had expressed a willingness to use his shotgun to defend himself against the former boyfriend of one of the women in the apartment on the night of the shooting and that on another earlier occasion he brought guns into his kitchen in anticipation of a hostile visit from the victim. Apart from the question of relevancy of this evidence to the matters at issue in this manslaughter and criminally negligent homicide case, clearly all that the two

prior incidents tended to prove was defendant's ready willingness to use firearms in connection with resolving his disputes with others. Such "bad acts" or immoral behavior are covered by the *Molineux* rule even though they do not constitute crimes *(see, People v Santarelli,* 49 NY2d 241, 248).

The theory of admissibility of the foregoing evidence adopted at the trial was that it tended to disprove the defense of accident or mistake. No such defense had been raised at this juncture in the trial. Defense counsel's opening stated that "the nitty gritty of the situation, we submit to you that the evidence will show that this man acted in total and complete self-defense; justification, if you will". The indictment charged defendant with reckless and criminally negligent conduct in "intentionally loading a .20 gauge shotgun, pointing it at the victim and discharging it into [his] chest". The brandishing of the weapon upon the victim's arrival was admitted by the defense. Since defendant was not charged with murder, the theory of the prosecution had to be that the act of discharging the weapon into the victim's chest was unintentional, i.e., accidental. Thus, the majority's conclusion that the objected-to evidence "may well have been irrelevant" is clearly correct, since accident was not a contested issue in the case. Certainly, these earlier incidents were, at best, of only slight probative value on the People's direct case, as compared to their possible prejudicial effect, which alone should have precluded their admissibility *(see, People v Ventimiglia,* 52 NY2d 350, 359-360; *People v Allweiss,* 48 NY2d 40, 47). The seriously prejudicial effect of this evidence is best demonstrated by its use in the prosecutor's summation, where it was asserted that the prior incidents proved that "[t]his defendant had shotgun on the brain" and that it told something about defendant's mental processes for several weeks before ultimately using the gun. The jury was thus invited to consider this evidence as establishing nothing other than defendant's predilection for violence while armed. This is precisely why the evidence should have been excluded *(see, People v McKinney,* 24 NY2d 180, 184-185; *People v Irby,* 79 AD2d 713, 714; *People v Boose,* 25 AD2d 606).

The foregoing error was compounded when the prosecution was permitted to cross-examine defendant, not merely on the issue of credibility, but again to disprove accident or mistake, concerning a prior conviction involving a threat to use the same gun. The fact that defendant had testified on direct examination that the gun discharged during a struggle with the victim was not inconsistent with the prosecution's theory

of the case that it was reckless or grossly negligent for defendant to have loaded the gun and pointed it at the victim, irrespective of the manner in which it was accidentally discharged. Again, the scant probative value of the evidence, when measured against the cumulative prejudicial effect of portraying defendant as a trigger-happy individual, repeatedly emphasized in the prosecutor's summation dictated against its admissibility *(see, People v Irby, supra)*.

For the foregoing reasons, the conviction should be reversed and a new trial ordered.