OPINION OF THE COURT
Rita G. Bolstad, J.
In this visitation proceeding initiated pursuant to Family Court Act article 6, the respondent mother objected to the introduction into evidence of a tape recording made by the petitioner father of telephone conversations between the fa *405 ther and the children. The court sustained the objection at trial and indicated that this written opinion would follow.
Harry and Esther R were married in 1971 and in 1980 the parties were divorced. Custody of the two children, Ayelet born September 5, 1975 and Avraham born June 3, 1977, was awarded to the mother with visitation rights provided for the father. The instant proceeding was initiated by the father for a modification of the existing order of visitation.
In the course of the petitioner’s testimony, an attempt was made to place into evidence a tape recording made by the father of telephone conversations between the father and the children. Oral argument on the admissibility of the recording raised important legal issues and counsel requested time to submit written memoranda. After careful consideration of the oral arguments and written memoranda and a review of the pertinent statutes and case law, the court held the recording to be inadmissible. The lack of any pertinent precedent and the importance of evidentiary problems in custody and visitation proceedings prompted the court to write this opinion.
Initially, the respondent argues that the tape recording was obtained by illegal eavesdropping and is therefore inadmissible. Penal Law § 250.05 defines eavesdropping as an unlawful wiretapping or mechanical overhearing of a conversation. "Unlawful” in this context means not specifically authorized by the Criminal Procedure Law. (Penal Law § 250.00 [3].) Wiretapping refers to an "intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment.” (Penal Law § 250.00 [1]; emphasis added.) Mechanical overhearing means the "intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat” (Penal Law § 250.00 [2]; emphasis added).
The laws of New York clearly prohibit the use of evidence obtained by illegal eavesdropping in both civil and criminal trials. (CPLR 4506; CPL 700.65).* The conversations recorded by Harry R., however, do not fall within the statutory definition of illegal eavesdropping. The conversations were recorded *406 by Mr. R. as either the sender or receiver of these communications and therefore cannot be deemed unlawful wiretapping. Nor can the recording be considered mechanical overhearing since Mr. R. was a party and obviously consented to the recording of the conversations. The fact that Esther R. or the children who were the other parties to the conversations lacked knowledge of, or might not have consented to, the recording of these phone calls does not render the recording eavesdropping pursuant to statutory definition.
Furthermore, although the 4th Amendment provides constitutional protection against eavesdropping (see, e.g., Katz v United States, 389 US 347), both the highest courts of New York and the Nation have held that the recording of a telephone conversation with one party’s consent but without the knowledge of the other party does not violate the 4th Amendment rights of the nonconsenting party. (See, People v Gibson, 23 NY2d 618 [1969], cert denied 402 US 951; On Lee v United States, 343 US 747; Fisch, New York Evidence § 734 [2d ed 1977]; see also, Matter of Berk v Berk, 70 AD2d 943 [2d Dept 1979].)
The respondent further argues that the tape recording is irrelevant as mere repetition of testimony already given in open court by the petitioner and that it lacks a proper foundation, without which it may not be admitted.
The essence of the evidentiary rules of this State is to provide the trier of fact with evidence that is relevant and material while preventing undue prejudice or unfair surprise to the opposing party, unnecessary prolonging of the hearing or clouding of the primary issue. To that end, rules governing the admission into evidence of sound recordings require that the relevance and materiality of such proof be established and a proper foundation be laid. (See, e.g., 21 NY Jur, Evidence, § 371; Fisch, op. cit. § 145.)
The court finds that the conversations recorded by Mr. R. with the children are both relevant and material to the major issue of this proceeding which is the father’s request for increased visitation and are not necessarily duplicative of the father’s direct testimony.
Time after time in custody and visitation proceedings the court is confronted with children, who in varying degrees have been influenced by a parent to respond to the other parent with anger or bitterness. This can manifest itself in unwillingness to leave the custodial parent for any period of visitation *407 with the noncustodial parent, verbal taunts or physical acting out of any other means whereby the feelings of the parent are transmitted through the child. The child’s unwitting actions as a pawn of a parent or parents in their own struggle, although deplorable, are relevant and material to the court’s assessment of the circumstances surrounding visitation.
Throughout this hearing it has been manifestly clear that the parties have been engaged in a long and bitter battle that at present centers over the issue of visitation. Well meaning though each parent may believe him or herself to be, these are parents whose anger towards each other has drastically affected the lives of their children. The recording made by Mr. R. may provide the court further insight into the children’s emotional state that is not available from Mr. R.’s own testimony.
As to the foundation for the admission of the recording, the elements of a proper foundation include a showing that the recording device was operable and its operator capable of using it, that the recording is authentic, unedited and audible, and that the speakers are identified and the recorded conversation took place voluntarily. It is not necessary for the proponent of the evidence to make an affirmative showing of all these elements. Rather it is incumbent on the proponent of the recording to prove whatever element is objected to.
The respondent herein contends that the petitioner is not an expert in recording telephone conversations and that by mailing the tape to his attorney, the chain of possession of the tape was broken. The court finds neither objection persuasive. Mr. R. need not be any kind of expert in sound recording to be considered capable of using the simple cassette recorder shown to the court. Nor is a "chain of possession” a requisite element of a proper foundation for admitting a recording of this nature into evidence. (People v McGee, 49 NY2d 48 [1979].)
Objections to a lack of chain of custody of a recording lack substance when a participant in the conversations recorded can testify as to their accuracy and absence of any alterations. (People v McGee, supra; People v Arena, 48 NY2d 944 [1979]; see also, People v Lynes, 49 NY2d 286 [1980].)
The respondent additionally objects to the admission of this recording based on an assertion of a "child-parent privilege”. The respondent cites Matter of A & M (61 AD2d 426) as precedent for the establishment of a parent-child privilege *408 that would exclude the recording made by Mr. R of the conversations between him and the children. That case concerned a motion by the parents of a young man to quash subpoenas for their appearance before a Grand Jury investigating an arson which was seeking evidence of possible admissions made to them by their son.
A careful reading of the case reveals that the court therein not only recognized the lack of any statutory parent-child privilege but also refused to include communications between parent and child under the marital privilege of CPLR 4502. Moreover, while acknowledging a need to protect certain child-parent communications, the court insisted that "the creation of a privilege devolves exclusively on the Legislature” and declined to create such a privilege judicially. (61 AD2d, at pp 434-435.) Specifically the court indicated concern that creating a parent-child privilege could work against the child’s interests in Family Court matters and limited its discussion as to any constitutional right to privacy to those cases wherein all parties to the communication wish to preserve its confidentiality.
The Family Court is asked to deal with the most complex and intimate issues of family life. Its Judges are given wide discretion to intervene in the lives of children .and parents and bear a grave responsibility to make comprehensive findings of fact and fashion appropriate dispositions. To that end procedural evidentiary rules of civil and criminal practice are applicable only to the extent that they are appropriate to the proceeding. (See generally, Family Ct Act §§ 165, 303.1, and specifically 1046 [a] [vii], for example, which precludes the use of statutory privileges to exclude evidence otherwise admissible in neglect proceedings.)
Custody and visitation proceedings particularly require liberal access to all relevant and material evidence, since the court is required to assess not only facts but also emotions, perceptions and attitudes. Imposition of a parent-child privilege could be an odious burden on the court’s ability to ascertain the emotional and mental status of the family members involved, and this court declines the respondent’s application to create such a privilege. However, neither lack of a statutory parent-child privilege nor the court’s refusal to create such a privilege necessarily implies that all parent-child communications are admissible in evidence. The flexibility granted to the Family Court in applying procedural and evidentiary rules works both ways — while the court is able to *409 obtain evidence that might be inadmissible in civil or criminal proceedings in other courts, it is also obligated to weigh factors that have no bearing except in such intimate proceedings as are heard in this court. The chilling effect on the relationship between the petitioner and his children that would occur should this court admit the recorded conversations in question is just such a factor.
Custody and visitation proceedings demand inquiry into the heart of a family — its interactions, its private communications, and its relationships. Much of that information is available to the court via the testimony of the parents and where necessary of the children. Other evidence is available to the court by evaluations of family members by social workers, psychologists, psychiatrists or other trained professionals and by witnesses testifying as to their own observations of the family.
But none of these avenues to explore the circumstances of the family require the court to violate the confidence and trust children have in their parents. That is exactly what would occur were this court to admit into evidence the recording Mr. R. made of his conversations between himself and his children. These children, like any other children, are entitled to feel that they may communicate freely with their parents without fear that those communications will be recorded and revealed later. The court cannot prevent Mr. R. from recording these conversations. But it can preclude their use in this proceeding, although otherwise admissible, to protect the spirit of trust and confidence that needs to exist between child and parent in order for the children’s emotional health to be safeguarded.
Accordingly, the objection to the introduction into evidence of the recorded conversations between Mr. R. and the children was sustained.

 The obvious caveats are when an eavesdropping warrant has been duly-issued pursuant to CPL article 700 or when the evidence is to be used against a person who is alleged to have committed the crime of eavesdropping. (CPLR 4506.)