Bellacosa, J.
(dissenting). The accused was an uncounseled incarcerated State felon unable to understand or speak English. As he was formally arraigned before a Judge in a State correctional facility on a new criminal charge committed in prison, he was "authorized” by an agent of the State — an ad hoc Spanish interpreter — to make an inculpatory statement in *941 open court and on the record. After a suppression hearing, that statement was held admissible in evidence and a guilty plea followed. This person, facing the formal initiation of a criminal prosecution, was entitled to and needed all the protection our Constitutions, statutes and cases so assiduously confer on him. Yet the violation of this accused’s right to counsel with respect to the use of his statement is being excused, because this otherwise inadmissible evidence is characterized as a spontaneous, voluntary utterance.
I respectfully dissent and vote to reverse and suppress.
The spontaneous utterance exception (see, e.g., People v Lynes, 49 NY2d 286) is a gossamer sliver in the formidable counsel wall. It has never before been applied to an utterance made in a threshold judicial setting where a primary responsibility is the judicial advisement of rights, especially the central counsel right itself (CPL 180.10 [3]). The embellishment of the scene in this case is the agent of the State telling the uncomprehending accused to go right ahead and speak. If this accused had spontaneously uttered his question in English in this setting, there cannot be the slightest doubt of the arraigning Judge’s required response: "Do not say anything without your counsel present, to which, by the way, you have an absolute right at this accusatory/arraignment stage of this criminal proceeding and which I have an additional obligation to provide to you.” (See, CPL 180.10 [4], [5]; People v White, 56 NY2d 110, 112.)
Therefore, I conclude that this accused in these circumstances was legally incapable of providing a voluntary uncounseled statement. The invocation of the spontaneous utterance exception in such a setting converts the sliver in the counsel wall into a significant aperture. This is a difference in kind, not in degree, from the few exceptional applications of this subsidiary rule. It is, as I see it, the rule of law itself which is transformed. The undisturbed findings rationale cannot insulate this violation of the accused’s desperately needed and perfectly appropriate right not to have statements used against him without his counsel having been present or provided at his arraignment.
I agree that an accused may blurt out a statement in any language in a court or anywhere else which may rightly qualify as an admissible spontaneous utterance under our existing rules. However, no matter in what language a question is posed by any accused, that accused who asks permis *942 sion to speak up in court at an arraignment, as here, should receive an equal response before the law: "No. Not without your counsel present.” If before or after that warning an accused nevertheless unilaterally chooses to make an admission, we shall have to confront and decide that quite different case when it arises (see, People v White, 56 NY2d, supra, at 112).
A major flaw, as I understand it, in this case is that the majority, in order to allow the spontaneous utterance justification, necessarily concludes that the translator neither intended nor anticipated the accused’s inculpatory remarks when she authorized him to speak. This reasoning relaxes the rigors of the spontaneity exception for uncounseled statements made by accuseds incapable of direct communication with a court and disadvantages those charged and compelled to rely on nonlawyer intermediaries when "directly confronted with the awesome law enforcement machinery possessed by the State” (People v Cunningham, 49 NY2d 203, 207). The interposition of a translator even giving an accused only "bare permission” (majority mem, at 940) to speak in a courtroom cannot lessen the court’s responsibility for safeguarding the rights of the accused in the unique, initial confrontation between the accused and the judicial system itself (see, e.g., CPL 180.10 [4], [5]). Rather, I see that responsibility as heightened.
Moreover, inasmuch as the Sixth Amendment right to counsel is implicated here, the Miranda case and its warnings having to do with only Fifth Amendment violations are irrelevant. The custodial and formal accusatory categories are quite distinct (Brewer v Williams, 430 US 387, 397-398) and, in any event, would suffer the same inconsequentiality here because Miranda warnings have no bearing on spontaneous utterances, and even with them there can be no cognizable waiver without counsel being present (People v Hobson, 39 NY2d 479, 484).
However, this aspect of the discussion is academic as we all agree that the accused could not and did not waive his right to counsel. That right indelibly attached since a criminal prosecution was begun against him. Inasmuch as we have held that waiver in such circumstance is a legal impossibility (see, People v Samuels, 49 NY2d 218), the rationale of this case for the first time applies the spontaneous utterance exception to the indelibly attached counsel right in a courtroom, where the express statutory safeguards tug in the opposite conclusion (CPL 180.10). As to whether it should apply in this case, we *943 differ. I do not consider my approach "novel” by proposing that the neutral courtroom setting and judicial process should guarantee full and equal protection under the pertinent right to counsel rules. Indeed, the majority agrees with me in that respect, but the special protection regrettably failed to materialize in this case. Instead, the majority’s nuanced change in the application of the exception inappropriately extends the law enforcement investigatory room into the courtroom for the accused’s judicial arraignment and provides the prosecution with an evidence-gathering bonus.
People v Lynes (49 NY2d 286, supra) must be contrasted with the Samuels line of cases and the instant case, as they are sharply different. In Lynes, an inculpatory statement was deemed spontaneous because "[t]he defendant himself initiated the conversation and the [police] officer’s response [in a correctional custodial setting, not a court arraignment] need not have been viewed as one designed to elicit some further reply by the defendant.” (Id., at 294.) Here, an accused in the preserve of the court itself asked to speak through the State’s agent. The translator’s direct permission to the accused — instead of asking the court for instructions as to how to respond —must be chargeable to the State and not to the accused in this situation. There can be no doubt in this circumstance that the accused’s statement after the translator’s authorization— necessarily "designed to elicit some further reply by the defendant” — is forbidden under two of the four categories of People v Maerling; it was "the result of * * * encouragement or acquiescence” (46 NY2d 289, 302-303 [emphasis added]).
The majority of law-abiding citizens usually are content with the mere words of their constitutional protections, especially the counsel right, because most rarely find themselves in critical situations where counsel is needed. On the hard specific application, however, this accused’s status as an incarcerated felon, being newly charged, cries out for action, not words. The authoritarian yet sanctuarial enclave of a court should warrant heightened vigilance, not the expansion of an exception to so fundamental a right.
The statement should have been suppressed and the prosecution’s case put to its proof without the evidentiary acquisition at the arraignment.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur; Judge Bellacosa dissents and votes to reverse in an opinion.
Order affirmed in a memorandum.